# EXHIBIT E

"What Does It Cost to Provide Electronic Public Access to Court Records?"
by Steve Schultze, Associate Director of the Center for Information Technology Policy at Princeton University

Share 0 More ▾ Next Blog» Create Blog Sign In

# Managing Miracles: Policy for the Network Society

Saturday, May 29, 2010

## What Does It Cost to Provide Electronic Public Access to Court Records?

US Courts have long faced a dilemma. Public access to proceedings is essential to a well-functioning democracy. On the other hand, providing public access requires expenditure of funds. Charging for access works against public access. Traditionally, these costs have been considered to be part of the general operating cost of courts, and there have been no additional fees for public access. The cost of the courthouse, the public gallery, and the bailiff are included. The administrative cost that the clerks incur in providing free public inspection of records is also covered, although the clerk may collect fees for filing actions or making physical copies.

I have been trying to understand how these practices have been translated into the networked digital era by exploring PACER, the US Courts' system for "Public Access to Court Electronic Records." Digital technologies have a way of pushing the cost of information dissemination toward zero, but as I observed in a recent working paper, this does not appear to be the trajectory of public access fees. Congress has provided a statutory limitation that states that the "Judicial Conference may, only to the extent necessary, prescribe reasonable fees... to reimburse expenses incurred in providing these services." In short, **you can only charge for public access services if those fees are used to, at most, cover the operating expenses for those same services.** What's more, in an accompanying conference report, Congress noted that it "...intends to encourage the Judicial Conference to move... to a fee structure in which this information is freely available to the greatest extent possible."

As described below, the Judiciary's financial reports appear to tell a different story: In the past several years, the Judicial Conference has consistently expanded the scope of its expenditures of public access fees such that the vast majority is now spent on other services.

### The Judiciary Financial Plans

The first source for my analysis is the Judiciary's annual set of Financial Plans, submitted to Congress after their funds for that year have been appropriated. These are not made publicly available, but I have obtained the relevant excerpts from 2007, 2009, (appended to my working paper) and 2010 (here). I haven't yet obtained the 2008 Plans, so for two data points from that year I have to estimate based on averages for the prior and following years. You can download my Excel spreadsheet that combines the top-level data and drives the chart below (note the comments in the spreadsheet for details on how the numbers were derived).

EPA (Electronic Public Access) funds are collected solely via PACER fees, and are expended on a variety of programs. One of these expenditures is the PACER program itself, but many other expenditures are not. This includes things like "courtroom technology", "telecommunications", and "CM/ECF" (the electronic filing system). I described some of these in my working paper, but after I published that I had the opportunity to ask a panel made up of staff members from the Administrative Office of the US Courts and federal judges how these fees were used. At the 7th Conference on Privacy and Public Access to Court Records, the Hon. William E. Smith from the United States District Court for the District of Rhode Island explained that PACER fees:

> "...also go to funding courtroom technology improvements, and I think the amount of investment in courtroom technology in '09 was around 25 million dollars. [...] Every juror has their own flatscreen monitors. We just went through a big upgrade in my courthouse, my courtroom, and one of the things we've done is large flatscreen monitors which will now -- and this is a very historic courtroom so it has to be done in accommodating the historic nature of the courthouse and the courtroom -- we have flatscreen monitors now which will enable the people sitting in the gallery to see these animations that are displayed so they're not leaning over trying to watch it on the counsel table monitor. As well as audio enhancements. In these big courtrooms with 30, 40 foot ceilings where audio gets lost we spent a lot of money on audio so the people could hear what's going on. We just put in new audio so that people -- I'd never heard of this before -- but it actually embeds the speakers inside of the benches in the back of the courtroom and inside counsel tables so that the wood benches actually perform as amplifiers. So now the back of the courtroom can really hear what's going on. This all ties together and it's funded through these fees."

Clearly, the costs of expensive multimedia systems for courtrooms are not part of the expenses

### About

I'm Steve Schultze, Associate Director of the Center for Information Technology Policy at Princeton. I'm interested in how public policy changes in the context of the internet. I tend to focus on telecommunications and government transparency. Please comment, and feel free to email me at sjs-at-princeton_dot_edu. I tweet at @sjschultze.

### What I've Written About...

FCC Transparency PACER Network Neutrality Spectrum Copyright Broadband CFAA CRS Lieberman privacy security Android GPO Malamud craigslist innovation law open source

### Archive

- ▶ 2013 (4)
- ▶ 2011 (1)
- ▼ 2010 (10)
  - ▶ August (1)
  - ▶ July (1)
  - ▶ June (1)
  - ▼ May (2)
    - What Does It Cost to Provide Electronic Public Acc...
    - Summary of "The FCC's Authority Over Broadband Acc...
  - ▶ March (2)
  - ▶ February (3)
- ▶ 2009 (32)
- ▶ 2008 (21)
- ▶ 2007 (3)

### Latest from "Freedom to Tinker"

Free Law Project Partnering in Stewardship of RECAP

Google Spain and the "Right to Be Forgotten"

Will Greenwald's New Book Reveal How to Conduct Warrantless Bulk

incurred in providing PACER. The 2007 Judiciary Financial Plans delineate between EPA (PACER) and non-EPA programs, illustrating the substantial discrepancy in funds generated by the PACER program and the funds spent on PACER. As described in my working paper, the Courts can point to no statutory justification for spending PACER fees on these non-EPA programs. As of 2009, the Financial Plans no longer separate EPA and non-EPA expenses, but it is easy to reconstruct these totals based on the individual breakouts included in the plans. By doing this, I generated the following graph:




Income is in green, which consists of either direct collections or carryover from the previous year. Expenditures are in red. As you can see, according to the courts, the cost of running PACER has grown only slowly over time, whereas other services have grown dramatically. The carryforward peaked in 2008 at $44.5m, around the time that the courts decided to start spending more aggressively on non-PACER programs. Specifically, in March 2007, the Information Technology Committee of the Judicial Conference observed that, "In recent years, significant unobligated balances have accumulated," and proposed to, "expand use of Electronic Public Access funds for IT efforts, such as applicable network, courtroom technology and jury management requirements. The IT Committee did not support any reduction to the fee at this time." In 2010, expenditures on non-EPA services will actually exceed EPA revenues. As of 2011, the courts plan to have spent out most of the carryforward they had accumulated.

In their defense, the courts argue that all of the programs on which they spent PACER funds are somehow generally related to electronic public access. The current PACER site notes that PACER fees are "used to finance other expenses related to electronic public access to the courts in areas such as courtroom technology and the Bankruptcy Noticing Center." Nevertheless, the fact remains that many of those do not represent "expenses incurred in providing [the charged for] services." Programs like CM/ECF or Telecommunications represent, at best, ancillary programs. However, most if not all of their expenses would exist regardless of the PACER program. What's more, parties have always had to pay filing fees for certain actions, and although CM/ECF has saved them time and money compared to the days of couriers, public access fees are instead paying for the entirety of the system's development. Likewise, the Telecommunications program extends far beyond anything required to support PACER, and would be necessary regardless of any EPA-related use. Bankruptcy Noticing ($9.7m planned for 2010) is a free service that creditors use to monitor incoming bankruptcy claims.

**Long Range IT Plan for the Judiciary**

My second source for a big-picture perspective on IT spending by the courts is the annual "Long Range Plan for Information Technology in the Federal Judiciary." The 2010 version is available from the US Courts website, but the link to the 2009 version was broken in the recent upgrade of the site (which was, ironically, intended to make information more easily accessible). Fortunately, I have it.

The Long Range Plan covers IT financing of the entire Judiciary, and as such it describes far more than just EPA (PACER) fees. That being said, there is a fascinating shift from the 2009 Plan to the 2010 Plan. Each year, the Judiciary forecasts costs for many different IT-related program areas. We can therefore compare the projections for FY 2010 that are found in the 2009 Plan with the FY 2010 projections found in the 2010 Plan. Four of these program areas immediately pop out in such a comparison: Electronic Public Access Program, Court Allotments, Court Administration and Case Management, and Telecommunications. You can see the changes from one year to the next reflected in the chart below:

| Program Costs | FY 2010 in 2009 LRP | FY 2010 in 2010 LRP | % Change | Change |
|---|---|---|---|---|

Surveillance on Americans from Abroad?

The importance of anonymous cryptocurrencies

Christopher Yoo on Comcast and Competition: When Antitrust Lawyers Do the Math

**Others**

Free Government Information

Freedom to Tinker

Public Knowledge

Technology Liberation Front

Legal Research Plus

Susan Crawford

Google Public Policy

Tales of the Sausage Factory

**Feeds**

Atom

RSS

| | | | | |
|---|---|---|---|---|
| *Electronic Public Access Program (PACER)* | $26.5m | $105.6m | +298.49% | +$79.1m |
| *Court Allotments* | $143.9m | $102.7m | -28.63% | -$41.2m |
| *Court Administration and Case Management* | $22.1m | $2.6m | -88.24% | -$19.5m |
| *Telecommunications* | $88.8m | $76.8m | -13.51% | -$12m |

Somehow, the projected costs of the Electronic Public Access program in 2010 grew by about 300% between 2009 and 2010. The cost of Court Allotments, Court Administration and Case Management, and Telecommunications shrank by an equivalent amount. It is hard to imagine that the actual plans of the Judiciary changed so dramatically from one year to the next. Rather, it seems far more likely that they simply decided to change their accounting practices to portray a cost for the EPA system commensurate with the amount they are collecting.

**What *Should* PACER Cost To Run?**

The FY2010 Financial Plan represents the lowest estimate from the Judiciary that I can find for current PACER costs, listing "Public Access Services and Applications" at $21.9m. But is that a reasonable number for what PACER should cost to run? Even if the Judicial Conference believes so, there are several reasons why it could be run far more efficiently:

*PACER is run on a highly inefficient decentralized infrastructure*
Every court runs its own instance of PACER software, requiring its own hardware, network connection, and support staff. This means that, between district, bankruptcy, and circuit courts, these resources are duplicated approximately 200 times. I have heard various theories for why this is the case, including the notion that control of records has been traditionally delegated to local jurisdictions. It may also be true that at the time PACER was first deployed this was the only technical and operational way to implement it. However, a modern system administrator would never choose to implement a system that exhibited these inefficiencies. Fortunately, the Administrative Office of the Courts already controls the whole network and a first step of physical (if not logical) centralization should be fairly straightforward.

*PACER costs include maintaining a staff in San Antonio, TX to answer phones*
Although the average PACER user may not be aware of it, there is a full-time staff at the PACER Service Center just waiting to answer their various PACER-related questions (In 2009 this included 135,000 help desk calls, and almost 30,000 support emails). This service helps to overcome some of the more confusing usability barriers of the current PACER system, because these people will walk users through the process. This service is funded out of basic PACER access fees, which are based on per-page access rather than phone calls to the support staff.

*PACER costs ironically include overhead from fee collection itself*
Every quarter, PACER staff must prepare and physically mail bills to all PACER users that have incurred a billable level of fees. They must deal with all of the administrative overhead of managing these collections, including chasing down delinquent debtors and prosecuting them, if necessary. This portion of costs is a self-fulfilling prophecy.

*PACER costs include expenses from upgrading the user interface, when third-parties could do a better job for free*
The courts could publish all PACER data in bulk-downloadable format with relative ease and at a low cost. In this scenario, it is very likely that third parties would make the data more easily accessible in a variety of formats, at no cost to the courts. This general principle is laid out by my colleagues in a paper entitled "Government Data and the Invisible Hand."

If providing electronic public access can be grounded in free bulk access, the costs might well be manageable even within a no-fee system. The courts might also find it easier to avoid straying from their statutorily constrained requirement to, "only to the extent necessary, prescribe reasonable fees... to reimburse expenses incurred in providing these services."

*[An advance copy of this post was sent to the Administrative Office of the Courts, which declined to provide comments, corrections, or additional documentation.]*

Posted by Steve Schultze at 6:26 PM
Labels: PACER

## 7 comments:

**Anonymous said...**

How can the courts be encouraged to fix this problem?

Do you think that a class action suit by PACER users against the PACER administrators would be feasible?

June 16, 2010 at 7:51 PM

**Steve Schultze said...**

I think the courts are listening, even if they have not yet been fully motivated to fix the problem. The more they hear from different constituencies about why the system should change, the more likely they are to do so.

A suit against the courts is an interesting suggestion, but would be challenging. I also don't know if the right form would be a class action -- how would you define the class in a certifiable way, and how would you deal with the jurisdictional issues given that this issue spans every court? I imagine the hurdle of suing the Judiciary (especially for damages) goes above and beyond the existing hurdles of suing the government.

June 17, 2010 at 9:03 AM

**Schlomo McGill said...**

I've read the paper together with the article above and, while there's a lot of good information here, there's so much misunderstanding of the budget process, the constituent parts of CM/ECF (including PACER) and the Judiciary's culture and structure that it's a bit frustrating. You could really improve your understanding of the Judiciary and the EPA initiatives through a short stint as a fellow (for example) at the Administrative Office. Have you ever tried to get a more accurate perspective than the source documents (which have some good facts mixed in with both deficient and abstruse explanations) might allow? Honestly, reading this stuff it comes off like something one might get from Google rather than research.

June 22, 2010 at 9:58 PM

**Steve Schultze said...**

Hey Schlomo. Here, as with your comment over on the recapthelaw.org blog, you assert bad numbers or analysis but give no explanation for what you think is wrong. I assure you the research goes well beyond mere googling (including consultation with congressional appropriators and conversations with the AO itself). The data comes directly from the courts, so if it's wrong then they've got a bigger problem.

You seem to indicate that you have some inside view of the culture or budgeting practices of the Judiciary. Do you work for the courts?

June 22, 2010 at 10:15 PM

**Schlomo McGill said...**

Steve --

No comment on where I work -- I like working there. An easy example of poor research (or maybe just summarization) in this article carries forward (no pun intended) the misunderstanding of the relationship between the JITF fund and EPA funds that has plagued most internet commentary on PACER funds (perhaps getting the most notice with Lieberman's letter). The "significant unobligated balances" do not refer to PACER revenues at all -- EPA funds account for about 12-14% of JITF funds from year to year (you do cover this better in the report). That's clear from the referenced document and would be more easily understood with some additional familiarity with the US Courts. There's no mention of the segregation of EPA funds or how they are alloted in comparison to other JITF funds. I wrote a bit more on Greg's blog entry (3 geeks). This sort of factual, yet inaccurate, stuff flows through most of the research that has been published on PACER and IT funding in the Courts.

June 23, 2010 at 8:18 PM

**Steve Schultze said...**

The "significant obligated balances" most certainly did include EPA fees. This is self-evident from the fact that part of the solution they propose in that report is to begin spending EPA fees on non-PACER items. The carryover included other sources as well, but that does not change the fact that the carryover from EPA was significant, and it grew to $44.5m in FY 2008. Any ambiguity you perceive (which in any event my longer paper addresses) is made irrelevant by the fact that I provide clear and correct numbers. Nothing you're saying is new to me, nor does it demonstrate any "misunderstanding of the relationship between the JITF fund and EPA funds."

Given that you evidently work for the courts, I'd encourage you to point to or provide additional data if it would alter the conclusions. So far, I don't see anything.

June 23, 2010 at 10:41 PM

**thacker said...**

Regarding litigation, couldn't the Judicial Conference and the Administrative Office be named as defendants? Wouldn't it place the litigation square in the lap of the Supreme Court? Such a concept makes this mind spin.

What I do know as a user of PACER and as a non-attorney is that PACER fees have precluded my ability to ferret out fraud wherein evidence is contained within thousands of federal court records. I argue that because of its pay wall, equal protection has been denied.

The Judicial Conference could very easily solve this issue within its budget requests to Congress, e.g. create separate budget items to fund IT, CM/ECF, etc.

The Conference's concerns over security via access, RECAP, etc. that I have personally heard from the courts and Administrative Office is dual-edged. The courts face much greater internal security issues, e.g. the courts' reliance upon IE6, then they do from that of a public repository.

Regardless, Shultze, thanks both to you and Princeton, along with countless others for helping the small guy such as myself.

And a final word to the federal courts ...for christ's sake, you are the federal courts and should set the standard and bar in all things and within things that the rest of us should always strive to achieve.

June 30, 2010 at 7:19 PM

- Post a Comment

## Links to this post

Create a Link

Newer Post Home Older Post

Subscribe to: Post Comments (Atom)

Powered by Blogger.