1  STUART F. DELERY
   Assistant Attorney General
2  MELINDA L. HAAG
   United States Attorney
3  ARTHUR R. GOLDBERG
   Assistant Branch Director
4  JUSTIN M. SANDBERG, IL. BAR NO. 6278377
   Trial Attorney
5  United States Department of Justice
   Civil Division, Federal Programs Branch
6  20 Mass. Ave. NW, Rm. 7302
   Washington, D.C.  20001
7  Telephone:  (202) 514-5838
   Facsimile:  (202) 616-8202
8  Email: Justin.Sandberg@usdoj.gov

9  *Counsel for Defendants*

10

11

12             **IN THE UNITED STATES DISTRICT COURT**
               **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
13                          **SAN JOSE DIVISION**

14  _____
                                            )
15  AARON GREENSPAN, *et al.*,              )  Case No.: 5:14-cv-2396
                                            )
16             Plaintiffs,                  )  Hearing Date:  October 2, 2014 at 9:00 a.m.
                                            )
17        v.                                )
                                            )  **NOTICE OF MOTION AND MOTION**
18  ADMINISTRATIVE OFFICE OF THE            )  **TO DISMISS AMENDED COMPLAINT**
    UNITED STATES COURTS, *et al.*,         )
19                                          )
               Defendants.                  )
20                                          )
                                            )
21  _____)

22

23

24

25

26

27

28

PLEASE TAKE NOTICE that on October 2, 2014 at 9:00 a.m., or as soon as this matter may be heard, Defendants will move, and hereby do move, to dismiss Plaintiffs' Amended Complaint in the above-captioned action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendants' motion to dismiss is based upon this notice, the accompanying Memorandum of Points and Authorities, the pleadings, and any other matter the Court may consider at oral argument or otherwise.

A proposed order accompanies this motion.


Dated: August 4, 2013                          Respectfully submitted,

                                               STUART F. DELERY
                                               Assistant Attorney General

                                               MELINDA L. HAAG
                                               United States Attorney

                                               ARTHUR R. GOLDBERG
                                               Assistant Director, Federal Programs Branch

                                                 _/s/ Justin M. Sandberg_
                                               JUSTIN M. SANDBERG, IL Bar No.
                                               6278377
                                               Trial Attorney
                                               U.S. Department of Justice
                                               Civil Division, Federal Programs Branch
                                               20 Mass. Ave. NW, Rm. 7302
                                               Washington, D.C. 20001
                                               Telephone:    (202) 514-5838
                                               Facsimile:    (202) 616-8202
                                               Justin.Sandberg@usdoj.gov
                                               *Counsel for Defendants*

## **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .......................................................................................................................... 2

ARGUMENT ............................................................................................................................... 5

I.      Plaintiff's Challenges to the Local Rules Fail for Threshold Reasons ............................... 5

II.     Local Rules 3-9(b) and 5-1(b) Do Not Violate Equal Protection Principles ...................... 7

III.    Local Rule 3-9(b) Comports with Due Process Requirements ......................................... 10

IV.     Local Rule 3-9 Does Not Deny Plaintiffs Access to the Courts ....................................... 13

V.      The Court Should Dismiss Plaintiffs' Claims Alleging that the PACER
        System Violates the Due Process Clause ........................................................................ 14

VI.     The PACER Fee Schedule Does Not Deprive Plaintiffs of the Right to Be
        Heard, and the Constitution Does Not Guarantee Appeal Rights .................................... 17

VII.    PACER Affords Plaintiffs Access to the Courts .............................................................. 18

VIII.   The E-Government Act Claim Lacks a Cause of Action and Waiver of
        Sovereign Immunity ........................................................................................................ 20

IX.     The Federal Tort Claims Act Fails Because Plaintiffs Did Not Sue the U.S.
        And Did Not Allege Any Actionable Torts....................................................................... 22

CONCLUSION ......................................................................................................................... 24

1
2

# TABLE OF AUTHORITIES

3

**CASES**                                                              **PAGE(S)**

4
5
*Andrews v. Bechtel Power Corp.,*
 780 F.2d 124 (1st Cir. 1985) ................................................................................13

6
*Arlington Heights v. Metropolitan Housing Development Corp.,*
 429 U.S. 252 (1977) ...................................................................................8, 16
7

8
*Ashcroft v. Iqbal,*
 556 U.S. 662 (2009) ...................................................................................9

9
10
*Bacon v. Reyes,*
 2013 WL 1405843 (D. Nev. April 4, 2013) ...................................................20

11
12
*Bell Atl. Corp. v. Twombly,*
 550 U.S. 544 (2007) ...................................................................................5

13
*Bishop v. C & P Trucking Co.,*
 840 F.Supp. 118 (N.D. Ala. 1993) ...................................................................19
14

15
*Brandon v. Holt,*
 469 U.S. 464 (1985) ...................................................................................6

16
17
*In re Burley,*
 738 F.2d 981 (9th Cir. 1984) ...................................................................18

18
19
*Cascadia Wildlands v. Kitzhaber,*
 911 F.Supp.2d 1075 (D. Or. 2012) ...................................................................6

20
*City of Cleburne, Tex. v. Cleburne Living Ctr.,*
 473 U.S. 432 (1985) ...................................................................................8

21
22
*Comm. Concerning Cmty. Improvement v. City of Modesto,*
 583 F.3d 690 (9th Cir. 2009) ...................................................................9, 16

23
24
*In re Corrinet,*
 645 F.3d 1141 (9th Cir. 2011) ...................................................................11

25
26
*Courthouse News Service v. Planet,*
 750 F.3d 776 (9th Cir. 2014) ...................................................................19

27
*Eitel v. Holland,*
 787 F.2d 995 (5th Cir. 1986) ...................................................................13

28

ii

*F.C.C. v. Beach Communications, Inc.,*
    508 U.S. 307 (1993) ..................................................................................... 17

*F.D.I.C. v. Craft,*
    157 F.3d 697 (9th Cir. 1998) ..................................................................... 23

*In re Fidelity Mortg. Investors,*
    690 F.2d 35 (2d Cir. 1982) ........................................................................ 21

*Giannini v. District Court for Dist. of Northern Cal.,*
    2013 WL 503081 (N.D. Cal. Feb. 28, 2013) ............................................... 6

*Goldhaber v. Foley,*
    519 F. Supp. 466 (E.D. Pa. 1981) .............................................................. 22

*Golinski v. U.S. Office of Pers. Mgmt.,*
    824 F. Supp. 2d 968 (N.D. Cal. 2012) ......................................................... 8

*Gutierrez v. Wells Fargo,*
    622 F. Supp. 2d 946 (N.D. Cal. 2009) ....................................................... 23

*Hawkeye Bank & Trust, Nat'l Ass'n v. Baugh,*
    463 N.W. 2d 22 (Iowa 1990) ..................................................................... 11

*In re Holliday's Tax Services, Inc.,*
    417 F. Supp. 182 (E.D.N.Y. 1976) ............................................................ 11

*In re IFC Credit Corp.,*
    663 F.3d 315 (7th Cir. 2011) ..................................................................... 12

*In re Icenhower,*
    --- F.3d ---,  2014 WL 2883884 (9th Cir. 2014) ............................................ 19

*Johnson v. Moore,*
    948 F.2d 517 (9th Cir. 1991) ..................................................................... 20

*Jones v. Franzen,*
    697 F.2d 801 (7th Cir. 1983) ..................................................................... 20

*Kennedy v. United States Postal Serv.,*
    145 F.3d 1077 (9th Cir.1998) ..................................................................... 23

*Kowalski v. Tesmer,*
    543 U.S. 125 (2004) ........................................................................... 15, 19

*Lance v. Adams,*
　　2011 WL 1813061 (E.D. Cal. May 6, 2011) ..................................................... 24

*Larson v. Domestic and Foreign Commerce Corp.,*
　　337 U.S. 682 (1949) .....................................................................................21, 22

*In re Las Colinas Development Corp.,*
　　585 F.2d 7 (1st Cir. 1978) ................................................................................. 12

*Lincoln Alameda Creek v. Cooper Indus., Inc.,*
　　829 F. Supp. 325 (N.D. Cal. 1992)................................................................... 24

*Logan v. U.S. Bank Nat'l Ass'n,*
　　722 F.3d 1163 (9th Cir. 2013) .......................................................................... 20

*Lujan v. Defenders of Wildlife,*
　　504 U.S. 555 (1992) ..................................................................................passim

*Mathews v. Eldridge,*
　　424 U.S. 319 (1976) ................................................................................... 10, 18

*McKissock & Hoffman v. Waldron,*
　　2011 WL 3438333 (E.D. Pa. Aug. 5, 2011) .................................................... 21

*Mills v. United States,*
　　742 F.3d 400 (9th Cir. 2014) ............................................................................ 20

*Muirhead v. Mecham,*
　　427 F.3d 14 (1st Cir. 2005) .............................................................................. 21

*Mullis v. U.S. Bankruptcy Court for Dist. of Nevada,*
　　828 F.2d 1385 (9th Cir. 1987)............................................................................ 6

*Nat'l Ass'n of Radiation Survivors v. Derwinski,*
　　994 F.2d 583 (9th Cir 1993) ............................................................................. 14

*Novell, Inc. v. United States,*
　　46 Fed. Cl. 601 (Fed. Cl. 2000) ....................................................................... 22

*Novell, Inc. v. United States,*
　　109 F. Supp. 2d 22 (D.D.C. 2000)...............................................................21, 22

*Owyhee Grazing Ass'n, Inc. v. Field,*
　　637 F.2d 694 (9th Cir. 1981) ............................................................................ 24

*PMG Int'l Div. v. Rumsfeld,*
　　303 F.3d 1163 (9th Cir. 2002) ............................................................................ 9

*Personnel Adm'r of Mass v. Feeney,*
    442 U.S. 256 (1979) ................................................................................................16

*Pickus v. U.S. Bd. of Parole,*
    507 F.2d 1107 (D.C. Cir. 1974).............................................................................21

*Rosenbaum v. City and County of San Francisco,*
    484 F.3d 1142 (9th Cir. 2007) ................................................................................8

*Ross v. Moffitt,*
    417 U.S. 600 (1974) ..............................................................................................18

*Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council,*
    506 U.S. 194 (1993) .........................................................................................8, 10

*Rumsfeld v. FAIR,*
    547 U.S. 47 (2006) ................................................................................................13

*San Antonio Indep. School Dist. v. Rodriguez,*
    411 U.S. 1 (1973) ..................................................................................................17

*Schmidt v. Contra Costa County,*
    693 F.3d 1122 (9th Cir. 2012) ................................................................................6

*Seltzer v. Foley,*
    502 F. Supp. 600 (S.D.N.Y 1980) ........................................................................21

*State Employees Bargaining Agent Coalition v. Rowland,*
    494 F.3d 71 (2d Cir. 2007) ......................................................................................6

*Supreme Court of Virginia v. Consumers Union of the United States,*
    446 U.S. 719 (1980) ................................................................................................6

*Tashima v. Administrative Office of the U.S. Courts,*
    719 F. Supp. 881 (C.D. Cal. 1989) .......................................................................21

*Taylor v. Knapp,*
    871 F.2d 803 (9th Cir. 1988) ................................................................................11

*Think Computer Corp. v. Dwolla,*
    5:13-CV-2054 (EJD) ...............................................................................................2

*Think Computer Corp. v. Square, Inc.,*
    5:14-CV-1374 (PSG)...............................................................................................2

*Think Computer Corp. v. Venchiarutti,*
    5:11-CV-5496 (HRL) ..............................................................................................2

*United States v. Frank,*
   864 F.2d 992 (3d Cir. 1988) ....................................................................21

*United States v. Hagerman,*
   545 F.3d 579 (7th Cir. 2008) ..................................................................12

*United States v. High Country Broadcasting Co.,*
   3 F.3d 1244 (9th Cir. 1993) ................................................................8, 11

*United States v. Hom,*
   --- F. Supp. 2d ---, 2014 WL 2527177 (N.D. Cal. June 4, 2014) ....................19

*United States v. Shearer,*
   473 U.S. 52 (1985) ..............................................................................24

*United States v. Yakima,*
   806 F.2d 853 (9th Cir. 1986) ..................................................................22

*Walters v. National Association of Radiation Survivors,*
   473 U.S. 305 (1985) ............................................................................13

*Ward v. Caldera,*
   138 F. Supp. 2d 1 (D.D.C. 2001)......................................................10, 13

*Washington Legal Foundation v. U.S. Sentencing Com'n,*
   17 F.3d 1446 (D.C. Cir. 1994)..........................................................21, 22

*Washington Legal Foundation v. U.S. Sentencing Com'n,*
   89 F.3d 897 (D.C. Cir. 1996)................................................................22

*Washington v. Davis,*
   426 U.S. 229 (1976) ..............................................................................9

*Williamson v. Reinalt-Thomas Corp.,*
   2012 WL 1438812 (N.D. Cal. April 25, 2012) ..........................................23

*Wolfe v. George,*
   486 F.3d 1120 (9th Cir. 2007) ..............................................................17

**STATUTES**

5 U.S.C. § 701(b)(1)(B)...............................................................6, 20
5 U.S.C. § 704 ..........................................................................6, 20
42 U.S.C. § 1983 ............................................................................5
28 U.S.C. § 1346 ...............................................................5, 22, 23
28 U.S.C. § 1654 .............................................................................8
28 U.S.C. § 1914 .............................................................................3

28 U.S.C. § 2680 ............................................................................................................24
28 U.S.C. § 2680(h)........................................................................................................24
28 U.S.C. §§ 601, 604 ...................................................................................................20
Pub. Law No. 107-347, 116 Stat. 2899 ..................................................................3, 20

**FEDERAL RULES OF EVIDENCE**

Fed. R. Evid. 201(d) ......................................................................................................19

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 12(b)(1) ....................................................................................................................5
Rule 12(b)(6) ....................................................................................................................5

**CALIFORNIA LOCAL RULES OF CIVIL PROCEDURE**

Rules. L.R. 3-9(a) ............................................................................................................4
Rules. L.R. 3-9(b)......................................................................................................passim
Rules. L.R. 5-1(b)......................................................................................................passim
Rules. L.R. 83-1 ........................................................................................................4, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiffs – an individual, along with the corporation and foundation which he heads – filed this lawsuit to remedy the "inequitable treatment of litigants" which allegedly plagues the federal court system.  First Amended Complaint for Declaratory and Injunctive Relief ("FAC"), June 16, 2014, Doc. No. 23, ¶ 1.  According to Plaintiffs, the "United States Courts . . . discriminate against [*pro se* and small business] litigants in a number of ways."  *Id.*  But "two stand out."  *Id.*  One alleged method of discrimination is the "imposition of unconstitutional Local Rules and policies that are designed to favor the financial interests of attorneys and harm the interests of non-attorneys."  *Id.*  The prime targets for Plaintiffs under this rubric are local rules that require (1) corporations and similar entities to be represented by counsel and (2) *pro se* litigants to obtain court permission before using the electronic filing system (also "CM-ECF").  (Plaintiffs have filed this suit without an attorney.)  The second avenue of discrimination is the "imposition of an unreasonable and unlawful cost structure for access to public domain materials vital to the successful prosecution of a case."  *Id.*  In other words, Plaintiffs think that it costs too much to download court filings.

These claims do not lack ambition.  But they do lack substance.  The principle that corporations must appear by counsel has existed for almost two centuries and has survived numerous legal challenges.  There is no reason that Plaintiffs' challenges should succeed where the others have failed, thereby upending almost 200 years of precedent.  And requiring *pro se* litigants to obtain the court's permission to use the electronic filing system makes sense.  When enacting the rule, the Judges of this District could have reasonably thought that *pro se* litigants as a group would be more likely to make electronic filing errors and, therefore, that individual *pro se* litigants should establish, on a case-by-case basis, that they should have access to the electronic filing system.

Plaintiffs' claims that the system for accessing court records is unlawful fare no better. The system, which charges only $.10 per page (and only if one of five exceptions is inapplicable), provides all of the access necessary to allow litigants of all stripes to litigate their claims.  In any case, Plaintiffs lack standing, or face other insurmountable threshold problems, in raising the claims challenging both the local rules and the administration of the PACER system.

For the reasons stated above, as elaborated below, Plaintiffs' lawsuit should be dismissed.

## BACKGROUND[1]

Plaintiff Aaron Greenspan founded and owns Plaintiff Think Computer Corporation ("Corporation).  FAC ¶ 17.  He also is the founder and chairman of the board of directors of Plaintiff Think Computer Foundation ("Foundation"), which uses software developed by the Corporation to "make [government] information more accessible to the general public."  FAC ¶ 18. The Corporation is no stranger to litigation, having filed three suits in the Northern District of California in last three years.  *Think Computer Corp. v. Venchiarutti*, 5:11-CV-5496 (HRL); *Think Computer Corp. v. Dwolla*, 5:13-CV-2054 (EJD); *Think Computer Corp. v. Square*, *Inc.*, 5:14-CV-1374 (PSG).  In each, it was represented by an attorney.

Through these litigation activities – and perhaps Mr. Greenspan's research activities, FAC ¶ 148 – Plaintiffs have incurred expenses electronically accessing documents filed with the federal courts.  *Id.*  ¶¶ 54, 159.  Electronic access to public court filings, in the federal courts, is provided by a system known as PACER.  *See id.* ¶ 5.  The PACER system is operated by the Administrative Office of the United States Courts (also "AOUSC"), which is the "central support entity for the Judicial Branch," "provid[ing] a wide range of administrative, legal, financial, management,

---

[1] For purposes of this motion, the facts alleged in the complaint are taken as being true.  Also, this background section addresses only the facts related to Plaintiffs' claims against the Federal Defendants; it does not address facts related to Plaintiffs' claims against the American Bar Association.

program, and information technology services to the federal courts."  *See Administrative Office of the United States Courts,* http://www.uscourts.gov/FederalCourts/UnderstandingtheFederalCourts-/AdministrativeOfficeaspx (last visited Aug. 4, 2014).  As a general rule, the PACER system charges $.10 per page, a rate established by the U.S. Judicial Conference.  28 U.S.C. § 1914, Judicial Conference Schedule of Fees.  There are a number of exceptions to this rule: 1) there is no charge for judicial opinions; 2) parties receive a free copy of filings in their own cases; 3) if a user incurs fees of less than $15 per quarter, then the fees are waived; 4) free access to PACER documents is available on public terminals in clerks' offices; and 5) courts can grant fee waivers, allowing PACER to be used without charge.  28 U.S.C. § 1914, Judicial Conference Schedule of Fees, ¶¶ 8, 9.  But, nonetheless, $.10 per page is the rule.

Plaintiffs insist that $.10 per page is too high because a statute, the E-Government Act of 2002, constrains the Judicial Conference to "prescribe fees" "only to the extent necessary," Pub. Law No. 107-347, 116 Stat. 2899, and, they assert, PACER is running a surplus and could be operated more cheaply, in any case, FAC ¶¶ 35, 39.  Plaintiffs have other complaints as well, including that that they are charged for phantom pages and that judicial opinions are commonly misclassified as something other than opinions.  *E.g., id.* ¶ 54.  Unsurprisingly, then, Plaintiffs sought a refund of PACER charges through the mechanism created by the AOUSC, which entails filing a simple form available online.  *See* PACER Service Center Refund Form, available at http://www.pacer.gov/documents/PSC_RefundForm.pdf (last visited Aug. 4, 2014).  The refund request was denied because "the charges incurred [we]re in accordance with the Judiciary's policies." Mtn. for Leave to File Second Am. Compl., Ex. B, July 23, 2014, ECF Dckt. No. 34.

Plaintiffs decided to challenge various aspects of the administration of the PACER system, and they concluded that they wanted to do so without an attorney.  *See* FAC ¶¶ 125-126.  But, with respect to the Corporation and the Foundation (also collectively the "Corporate Plaintiffs"), the

Northern District of California's Local Rules of Civil Procedure present an impediment to this lawyer-free approach.  Specifically, Local Rule 3-9(b) provides that "[a] corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court."  Of course, certain litigants – *i.e.*, natural persons – may proceed *pro se*.  L.R. 3-9(a).  With respect to *pro se* litigants, the Local Rules state that the electronic document filing system may be used only if the Court grants the *pro se* litigant permission to do so.  L.R. 5-1(b).  Like all Local Rules, these rules were adopted by a majority vote of the active judges of the Court, in consultation with the Local Rules Committee.  L.R. 83-1.  The public may propose rule changes and is also afforded the opportunity comment on proposed substantive changes to the rules.  L.R. 83-2.

Local Rules 3-9(b), 5-1(b) and 83-1 joined the administration of the PACER system as a target of Plaintiffs' effort to remedy the alleged "systematic inequitable treatment of litigants in the federal court system, including but not limited to *pro se* litigants and small businesses."  FAC ¶ 1.  Plaintiffs, who are not represented by counsel, raise eight distinct counts against the two sets of Federal Defendants.[2]  The first three counts challenge the already identified local rules, alleging violations of the First Amendment as well as the Constitution's equal protection and due process principles.[3] These counts are levied against the United States District Court for the Northern

---

[2] When the initial complaint in this case was filed – also without an attorney – the only Plaintiffs were the Corporate Plaintiffs.  Compl., May 23, 2014, ECF Dckt. No. 1. The Court issued an order to show cause instructing Plaintiffs to explain why the case should not be dismissed in its entirety for their failure to be represented by an attorney, citing Local Rule 3-9(b).  Order, June 11, 2014, ECF Dckt. No. 19.  The complaint was then amended to add Mr. Greenspan as a plaintiff.  The Court decided that the addition of Mr. Greenspan, who can litigate *pro se*, *see* L.R. 3-9(a), established sufficient cause to stave off dismissal of the case in its entirety at that time.  Order, July 17, 2014, ECF Dckt. No. 33.

[3] The First Amended Complaint alleges, in several spots, that the Federal Defendants have violated the Fourteenth Amendment.  *E.g.*, FAC at p. 28 (heading for first claim).  Plaintiffs spotted this error, as well as a similar mistake (*i.e.*, invoking 42 U.S.C. § 1983 as a cause of action against Federal Defendants, *id.*), and have sought to file a Second Amended Complaint.  The proposed

District of California (also "Northern District"), Chief Judge Claudia Wilken, and Court Clerk Richard Wieking.  The next five counts of the complaint assail the administration of the PACER system under the same constitutional provisions, as well as the E-Government Act of 2002 and the Federal Tort Claims Act, 28 U.S.C. § 1346.  The defendants named in these counts are the Administrative Office of the United States Courts and two employees of the AOUSC.

## ARGUMENT

The Court should dismiss all of Plaintiffs' claims against Federal Defendants.  Some should be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction.  Some should be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  And some could be dismissed for both reasons.  Importantly, "to survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint must "state a claim to relief that is plausible on its face."  *Id.* at 570.

### I.    Plaintiffs' Challenges to the Local Rules Fail for Threshold Reasons.

Plaintiffs' first three claims primarily challenge the content of two local rules, Rule 3-9(b) (requiring corporations and similar entities to appear by attorney) and 5-1(b) (setting terms of *pro se* litigants' access to CM-ECF).  FAC ¶¶ 100-131.  These claims are brought against the Northern District, the Chief Judge, and the Clerk of the Court; the Chief Judge and the Clerk are sued in their official capacities.  The claims fail for threshold, non-merits reasons.

First, no waiver of sovereign immunity permits suit against the United States District Court for the Northern District of California.  The Administrative Procedure Act waiver, which is often

---

amendments do not affect the arguments made in this motion, which do not turn on these errors: Citations to the Fourteenth Amendment have been treated as citations to the Fifth Amendment, and citations to § 1983 were ignored.

invoked in suits seeking equitable relief against the government, does not apply.  It authorizes review of certain final "agency" actions, 5 U.S.C. § 704, but it defines the term "agency" to exclude the "Courts of the United States."  5 U.S.C. § 701(b)(1)(B) (stating that the term "'agency' . . . does not include . . . the Courts of the United States").

Second, the Court lacks jurisdiction over the claims against the Chief Judge.  For one thing, Chief Judge Wilken is immune from suit.  The promulgation of local rules is a legislative function, and judges are immune from suit when acting in a legislative capacity.  *See Supreme Court of Virginia v. Consumers Union of the United States*, 446 U.S. 719, 734 (1980) (holding that the justices of the Virginia Supreme Court were immune from suit with respect to the promulgation of bar rules).  The Ninth Circuit has suggested in dicta in a footnote that legislative immunity is not available for official capacity claims, *Schmidt v. Contra Costa County*, 693 F.3d 1122, 1131 n.10 (9th Cir. 2012), but other courts have held the opposite, *e.g., State Employees Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 82-88 (2d Cir. 2007); *Cascadia Wildlands v. Kitzhaber*, 911 F.Supp.2d 1075, 1081 (D. Or. 2012).  And even if legislative immunity is not available for official capacity claims, the claims against Judge Wilken would be barred by the absence of a waiver of sovereign immunity:  A claim against a government official sued in her official capacity is a claim against the government entity for which she works – here, the Northern District.  *See Brandon v. Holt*, 469 U.S. 464, 471–72 (1985).

Finally, the Clerk of the Court enjoys immunity for his role in the implementation of the local rules (by, for example, recording any judicial decisions based on them). *See Mullis v. U.S. Bankruptcy Court for Dist. of Nevada*, 828 F.2d 1385, 1390-94 (9th Cir. 1987) (affording clerks quasi-judicial immunity for tasks integral to the judicial process); *Giannini v. District Court for Dist. of Northern Cal.*, 2013 WL 503081, *5-*6 (N.D. Cal. Feb. 28, 2013) (concluding that *Mullis* precludes claims for equitable relief against judicial officials, including clerks, sued in their official

capacities).[4]  Accordingly, these claims should be dismissed.  And as Local Rule 3-9(b) remains in place, the Corporate Plaintiffs' claims should be dismissed for failure to comply with the rule.

## II.        Local Rules 3-9(b) and 5-1(b) Do Not Violate Equal Protection Principles.

Plaintiffs allege that "Civil Local Rules 3-9(b) [requiring corporations and similar entities to appear by attorney], 5-l(b) [limiting access to CM-ECF] and similar Restrictive Local Rules in district and/or appellate courts nationwide" violate the Equal Protection Clause of the Fourteenth Amendment because they "have the effect of granting equal protection under the law to only those corporations . . . [or] other such entities that can afford or otherwise desire counsel," thereby "discriminate against small businesses in an unconstitutional manner."  FAC ¶¶ 101-02.   They also allege that "[b]y restricting membership in the District Court's Local Rules Advisory Committee to attorneys, without any statutory, regulatory, or other rule-based basis for doing so, California Defendants deny non-attorneys equal protection under the law and equal access to justice." *Id.* ¶ 110.

These allegations include several basic flaws that recur throughout the First Amended Complaint, which will be addressed briefly.  First, as Plaintiffs do not allege that they have been concretely injured by any rules in other districts, or any rules in this district other than Rules 3-9(b) and 5-1(b), they lack standing to challenge these unspecified "similar" rules.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).   Second and in a similar vein, as Local Rule 3.9(b) – regarding the need for corporations and similar entities to appear by counsel – does not apply to Mr. Greenspan, he lacks standing to challenge it.  *See id*.  Third, Mr. Greenspan also lacks standing to challenge this rule on behalf of the Corporate Plaintiffs because third-party representation would constitute an impermissible "end run" around the corporate-representation

---

[4] Again, if immunity were unavailable, the official capacity claims – as claims that run to the Northern District – would be barred by the absence of a waiver of sovereign immunity.

principle. *United States v. High Country Broadcasting Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (refusing to allow sole shareholder to intervene because "[t]o allow a sole shareholder with interests identical to the corporation's to intervene under such circumstances, rather than hire corporate counsel, would eviscerate Section 1654"[5]). Now, claim-specific arguments may be addressed.

The equal protection component of the Due Process Clause is an anti-discrimination provision, "essentially[,] a direction that all persons similarly situated should be treated alike." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Thus, "provisions which arbitrarily or irrationally create discrete classes cannot withstand constitutional scrutiny." *Golinski v. U.S. Office of Pers. Mgmt.*, 824 F. Supp. 2d 968, 981 (N.D. Cal. 2012). Only intentional discrimination may violate the Fifth Amendment's equal protection principle. *See Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264–265 (1977).

Plaintiffs' allegations that Local Rules 3-9(b) and 5-1(b) violate equal protection principles fail because they do not allege intentional discrimination. Local Rules 3-9(b) and 5-1(b) do not create different classes of corporations based on their size; they do not reference size at all. *See* L.R. 3-9(b) and 5-1(b). Thus, with respect to size, they are facially neutral. To establish that a facially neutral law discriminates impermissibly, Plaintiffs must demonstrate that the decision-maker intended to discriminate, *i.e.*, that "the decision-maker . . . selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Rosenbaum v. City and County of San Francisco*, 484 F.3d 1142, 1153 (9th

---

[5] "Section 1654" is 28 U.S.C. § 1654, a statute that courts have interpreted to require corporations to be represented by counsel. *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993) ("Thus, save in a few aberrant cases,[ ] the lower courts have uniformly held that 28 U.S.C. § 1654, providing that "parties may plead and conduct their own cases personally or by counsel," does not allow corporations, partnerships, or associations to appear in federal court otherwise than through a licensed attorney.").

Cir. 2007) (quotation marks and citations omitted).  The crux of Plaintiffs' allegations, however, is simply that these rules have a disparate impact on small corporations (or, in other words, have the effect of creating different classes).  *See e.g.*, FAC ¶ 102 (alleging that the rules have "the effect" of favoring large corporations); ¶ 106 (alleging that the "net effect" is to disfavor sub-chapter S corporations).  But there is no cause of action for disparate impact under Fifth Amendment.  *See Washington v. Davis*, 426 U.S. 229, 239 (1976).   And while "gross statistical disparities" in impact can suffice to establish intentional discrimination, such cases are "rare."   *Comm. Concerning Cmty. Improvement v. City of Modesto*, 583 F.3d 690, 703 (9th Cir. 2009) (quotation marks omitted).   Here there are no allegations of "rare" "gross statistical disparities" in impact, and no other allegations of an intention to discriminate against small corporations that can carry their claims across the "line between possibility and plausibility" as is necessary to survive a motion dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

Plaintiffs' allegation regarding the composition of the Local Rules Advisory Committee (namely, the fact that all of its members are attorneys) fares no better.  It lends itself to two possible interpretations, but neither can survive dismissal.  One possible interpretation is that the allegation is intended to address the intention requirement of Plaintiffs' equal protection claim (*i.e.*, to suggest that discrimination can be inferred from the composition of the board).  If so, then it lacks merit because the Ninth Circuit has rejected the notion that an inference of discrimination can be drawn from the composition of a board.  *PMG Int'l Div. v. Rumsfeld*, 303 F.3d 1163, 1173 (9th Cir. 2002) (concluding that the argument that an inference of discrimination can be drawn from the composition of a board "should be ignored").  The other possible interpretation is that the allegation is a challenge to the composition of the advisory committee.  If so, Plaintiffs lack standing to raise it.  They can only speculate that any injury that they allegedly suffer would be redressed if the Committee – which is, after all, just an *advisory* committee (the judges of this

9

District make the final decisions regarding local rules) – were to include non-lawyers. *See, e.g., Ward v. Caldera*, 138 F. Supp. 2d 1, 7-9 (D.D.C. 2001) (holding that plaintiff, a military officer, could not mount a facial challenge to the policy of including women and minorities on promotions boards because he could not establish standing); *Lujan*, 504 U.S. at 561 ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.") (quotation marks omitted from parenthetical).

### III. Local Rule 3-9(b) Comports with Due Process Requirements.

Plaintiffs maintain that Civil Local Rule 3-9(b) violates the Constitution's due process principles because it directs courts to "evaluate civil claims not on their merits, but by the identities of their filers, without allowing certain of those filers, namely, unrepresented corporations, any opportunity for due process via the very judicial system that is specifically designed to evaluate the merits of their claims." FAC ¶ 116.   In short, Plaintiffs appear to complain that they have been denied an opportunity to be heard. *See generally Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (holding that the core of due process is a meaningful opportunity to be heard).  They also again challenge the composition of Local Rules Advisory Committee, but this time under due process principles.  FAC ¶ 117.

The attack on Local Rule 3-9(b) – and the nearly 200 year-old practice that it memorializes – falls short.  Precedent and logic support the practice of requiring corporations (and similar entities) to be represented by attorneys.   The precedent will be reviewed shortly.  And the logic is simple:  The owners of a corporation waive the privilege of self-representation in exchange for the benefits of incorporating.

The Supreme Court has remarked that "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-02 (1993).

10

The Ninth Circuit has applied the corporate-representation principle many times, including to cases involving corporations with a single shareholder, *High Country Broadcasting Co.*, 3 F.3d at 1245, and over the objection that "to deny the corporation the opportunity to appear through lay representation is to deny it its right to a day in court," *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1988) (rejecting apparent due process challenge with respect to non-profit corporation because plaintiff was not real beneficial owner).   Other Courts have also rejected due process challenges to the corporate-representation principle.  *E.g.*, *Hawkeye Bank & Trust, Nat'l Ass'n v. Baugh*, 463 N.W. 2d 22, 25 (Iowa 1990) (collecting cases).  In short, the precedent is one-sided.

Indeed, even the case on which Plaintiffs most heavily rely, *In re Holliday's Tax Services, Inc.*, 417 F. Supp. 182, 184 (E.D.N.Y. 1976), does not support their claim.  *See, e.g.*, FAC ¶¶ 68, 103.  In that case, which the Supreme Court has termed "aberrant," *Rowland*, 506 U.S. at 202, the district court decided that a small-closely held corporation could appear without an attorney in a bankruptcy proceeding.  *In re Holliday's Tax*, 417 F. Supp. at 185.  It based its decision on the "inherent power of a court to supervise the proper administration of justice."  *Id.* at 184.  But the district court also stated that "[s]ince Mr. Holliday chose to accept the advantages of incorporation, such as limited liability, it would be neither shocking nor a violation of due process to require him now to bear the burden of that incorporation, such as increased costs of court appearances."[6]  *Id.* at 184 (internal quotations and citation omitted).  Moreover, the inherent power of the Court cannot help Plaintiffs here because, in this instance, the corporate-representation principle is enshrined in a local rule.  *See In re Corrinet*, 645 F.3d 1141, 1146 (9th Cir. 2011) ("District judges must adhere to their court's local rules, which have the force of federal law.").

---

[6] In the next sentence, the *Holliday's Tax* opinion confusingly states that "[w]e need not now consider whether the rule requiring corporate representation by counsel violates the Constitution."  *Id.* at 184.  It is not clear how to best reconcile this statement with the proceeding one.  But in the least, these lines mean that the court did not decide that requiring corporations to be represented by counsel violates the Constitution.

11

Plaintiffs also mistakenly rely on *In re Las Colinas Development Corp.*, 585 F.2d 7 (1st Cir. 1978).   *See* Corporate Plaintiffs' Response to the Court's Order to Show Cause, June 16, 2014, ECF Dckt. No. 24, at ¶¶ 9, 12, 32 (incorporated in complaint by reference at FAC ¶ 67).   At one point in that case, the First Circuit allowed a non-lawyer to represent a corporation because of "[s]pecial considerations, including the extraordinary legal ability that had been demonstrated by the [non-lawyer] corporate officer . . . ." *Id.* at 11. But the Court, which later termed the quoted language "unfortunate[ ]," *id.*,  did not decide that there was a constitutional right to representation. To the contrary, it ultimately decided that there is "nothing unfair, illegal or unconstitutional in [the] requirement" that corporations must be represented by counsel. *Id.* at 13.

In addition to precedent, a sound application of basic legal principles supports the conclusion that the local rule complies with the Due Process Clause.  Nothing obligates individuals to pursue activities through a corporate form.  Many choose to create corporate entities, however, to avail themselves of the benefits of such entities, including limitations on "personal liability of the owners for tort or contract claims against the business." *United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008).  But incorporation also "carries with it obligations[,] one of which is to hire a lawyer if you want to sue or defend on behalf of the entity." *Id.* at 582.   In other words, by choosing to incorporate, an individual gives up the statutory privilege to litigate *pro se* that she would have enjoyed had she chosen to operate her business as an unincorporated sole proprietorship. *E.g.*, *id.*; *In re IFC Credit Corp.*, 663 F.3d 315, 318-319 (7th Cir. 2011).  She has not, thereby, been deprived of her opportunity to be heard; she has simply agreed that she will be heard in a certain way – through trained counsel.  And assuming a corporation could, in some sense, litigate *pro se* (even though, as a legal construct, it can appear only through a representative), there is nothing untoward about, in effect, conditioning incorporation on a waiver of the privilege to litigate *pro se*, as it is a statutory privilege and not a constitutional right.  *See*

12

*Eitel v. Holland*, 787 F.2d 995, 998 (5th Cir. 1986) (concluding that there is no constitutional right to self-representation in a civil case); *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 137 (1st Cir. 1985) (same); *Rumsfeld v. FAIR*, 547 U.S. 47, 59-60 (2006) (nothing improper about imposing as a condition to an activity an obligation that could be imposed directly).  Nor can any incorporating shareholder claim surprise, as the corporate-representation principle has existed for nearly two centuries.

Plaintiffs again complain about the composition of the Local Rules Advisory Committee. But this time, there appears to be only one plausible interpretation, namely, that Plaintiffs believe that the Local Rules would be different – and better for them – if the Advisory Committee had some non-attorneys on it.  FAC ¶ 117.   As before, Plaintiffs lack standing to raise this kind of claim because they can only speculate that a differently composed advisory committee would lead the judges of this District to adopt different rules.  *Ward*, 138 F. Supp. 2d at 7-9; *Lujan*, 504 U.S. at 561.  The rule that redress must be "likely," rather than "speculative," *Lujan*, 504 U.S. at 561, also dooms the version of this claim that appears in Count III, FAC ¶ 128, which alleges First Amendment violations.

## IV.      Local Rule 3-9 Does Not Deny Plaintiffs Access to the Courts.

Plaintiffs next allege that Local Rule 3-9(b) deprives them of "access to the courts," FAC ¶ 124 (quotation marks and citation omitted), in violation of the First Amendment, by establishing that "Corporate Plaintiffs are not permitted to speak about such issues, or any issue, in the venue of the United States Courts, except through an expensive Government-sanctioned proxy with a financial incentive to distort Plaintiffs' statements to the extent they may represent a threat to the legal profession," *id.* ¶ 126.

This allegation is a restatement of the due process claim challenging Local Rule 3-9(b) and fails for the same reasons.  In *Walters v. National Association of Radiation Survivors*, the Supreme

13

Court held that a First Amendment claim premised on the denial of "meaningful access to the courts" was "inseparable" from a due process claim.  473 U.S. 305, 335 (1985).  Both claims were premised on the "same question – whether the process allows a claimant to make a meaningful presentation."  *Id.*  Accordingly, the Court concluded, the "claim has no independent significance." *Id.; see also Nat'l Ass'n of Radiation Survivors v. Derwinski,* 994 F.2d 583, 595 (9th Cir 1993) (concluding that a First Amendment access claim should be decided the same way as a due process claim because "focus" of the claim "is essentially the same"). The identical analysis applies here. Plaintiffs' due process challenge to Local Rule 3-9(b) focuses on essentially the same issue as this claim – whether the Corporate Plaintiffs have a meaningful opportunity to be heard in court in light of the requirement that they be represented by an attorney.  *Compare* FAC ¶¶ 114-116 *with* ¶¶ 124-126.  As explained above, precedent and logic establish that Plaintiff has a meaningful opportunity to be heard, and therefore that the due process claim fails.  Because Plaintiffs' First Amendment claim bears no "independent significance," it deserves the same fate as their due process claim – dismissal.

This memorandum has established that L.R. 3-9(b) is constitutional.  Accordingly, all eight of the claims brought by the Corporate Plaintiffs against Federal Defendants should be dismissed for failure to comply with the rule.

### V.    The Court Should Dismiss Plaintiffs' Claims Alleging that the PACER System Violates the Due Process Clause.

Count Four contains three distinct equal protection challenges relating to the operation or availability of PACER or CM-ECF.  The first is that "[t]he PACER Fee Schedule . . . discriminates against low-income persons . . . [because] [they] cannot afford to pay" fees "for access to information already in the public domain."  FAC ¶ 133.  The second is that *pro se* litigants, "[i]n many if not all districts," must seek approval from the court to use the CM-ECF system, whereas

14

"attorneys do not." *Id.* ¶ 135 (citing L.R. 5-1(b)). And the third is that PACER discriminates against "low-income persons" by requiring that they "possess a credit or debit card in order to merely sign up for PACER." FAC ¶ 138. These claims are directed against the AOUSC Defendants.

Plaintiffs lack standing to pursue these claims, which, in any case, lack merit. The first and third challenges assert the rights of low-income persons. Plaintiffs have no prudential standing to assert these rights. None of the Plaintiffs alleges that it is a "low-income person[ ]." *See* FAC. And Plaintiffs lack third-party standing to assert the rights of low-income persons as a group. To overcome the general rule that a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties," the plaintiff must have a "close relationship with the person who possesses the right." *Kowalski v. Tesmer*, 543 U.S. 125, 129, 130 (2004) (quotation marks and citations omitted). Plaintiffs do not allege that they have a close-relationship with low-income persons. *See* FAC.

Plaintiffs also lack constitutional standing to raise the second challenge – regarding access to the Northern District of California's CM-ECF system[7] – because the AOUSC Defendants cannot provide redress. *See Lujan*, 504 U.S. at 561. Access to the Court's CM-ECF system is controlled by the Local Rules, which are promulgated by the judges of this District and enforced by the judges and other court personnel. *See* L.R. 83-1. The employees of the Administrative Office of the United States Courts do not play a role in the issuance or enforcement of this District's local rules. Finally, the Corporate Plaintiffs do not have standing to raise the second challenge, regarding Local Rule 5-1(b) (regulating *pro se* access to CM-ECF), for another reason: The rule is inapplicable to the Corporate Plaintiffs (because they cannot litigate *pro se*), so it cannot cause them any injury-in-

---

[7] For the reasons stated in Section II of the argument section, Federal Defendants interpret this as a claim about access to CM/ECF only in the Northern District of California.

fact.  *See Lujan*, 504 U.S. at 560.

These allegations also do not pass muster on the merits.  The first and third challenges assert that the PACER rules have a disparate impact on low-income persons.  FAC ¶ 133 (alleging that the fee schedule discriminates because low-income persons "cannot afford to pay" fees); ¶ 138 (alleging that credit card requirement "discourages" low-income persons from signing up for PACER).[8]  But the Constitution prohibits disparate treatment, not disparate impact. *See Arlington Heights*, 429 U.S. at 264–65.  And Plaintiffs have not alleged the kind of "gross statistical disparities" in impact that would make this the "rare" case in which an intention to discriminate can be inferred from impact alone.  *Comm. Concerning Cmty. Improvement*, 583 F.3d at 703.  Instead, they make broad, conclusory allegations about the ability of low income litigants to pay fees and satisfy a credit-card requirement.  These allegations fall well short of making this the special case in which allegations of impact alone suffice to support an inference of discrimination.

Plaintiffs do make one allegation potentially regarding intent when they assert that "[t]he existence of Defendant AO's [Administrative Office's] $15.00-or-below per quarter PACER fee exemption demonstrates Defendant AO's awareness of the discriminatory nature of its PACER Fee Schedule."  FAC. ¶ 134.  The intention requirement of the equal protection component of the Fifth Amendment, however, "implies more than intent as . . . awareness of consequences.  It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part because of . . . its adverse effects upon an identifiable group."  *Personnel Adm'r of Mass v. Feeney*, 442 U.S. 256, 279 (1979) (quotation marks and citations omitted).  Plaintiffs do not allege "more than intent as . . . awareness."  To the contrary, they allege only "awareness."  FAC ¶ 134.  And, in any case,

---

[8] In fact, one need not have a credit card to register for PACER.  *See* PACER Case Search Only Registration, available at http://www.pacer.gov/reg_pacer.html (last visited Aug. 4, 2014).  But Plaintiffs' claim fails even if the Court assumes the truth of Plaintiffs' counterfactual allegation.

the fact of the exemption does not evince an intention to discriminate:  The existence of the exemption undercuts the allegation of discrimination, because reducing the costs of services – like PACER access – is an ineffective way of discriminating against people of limited means.

Finally, Plaintiffs' allegation that Local Rule 5-1(b) violates equal protection principles – by requiring individuals litigating *pro se* to seek leave of court before they may use the Court's electronic case filing system, FAC ¶ 78 – fails on the merits. *Pro se* litigants are not a protected class, *see Wolfe v. George*, 486 F.3d 1120, 1126 (9th Cir. 2007) (noting that "[f]requent *pro se* litigants are not a suspect class"), and there is no fundamental right to file documents electronically, *San Antonio Indep. School Dist. v. Rodriguez*, 411 U.S. 1, 34 (1973) (holding that fundamental rights are those guaranteed by the Constitution).  Thus, the distinction drawn between represented and non-represented parties, with regard to CM/ECF access, "must be upheld . . . if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."  *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 314 (1993).  There is.  The judges of this District could have reasonably determined that *pro se* litigants should be permitted to use the CM/ECF only upon leave of the Court because, as a group, they are more likely to use the system incorrectly and thereby inhibit the Court's ability to do its job.

## VI.    The PACER Fee Schedule Does Not Deprive Plaintiffs of the Right to Be Heard, and the Constitution Does Not Guarantee Appeal Rights.

The complaint again invokes due process.  This time Plaintiffs allege that aspects of the operation of the PACER system violate the Due Process Clause. FAC ¶¶ 140-45.  Specifically, Plaintiffs contend that the AOUSC Defendants have transgressed due process principles by (1) charging fees in excess of what the E-Government Act of 2002 allows, *id.* ¶ 141, and (2) failing to provide for a mechanism by which someone who has been denied a refund of PACER fees may appeal that decision, *id.* ¶ 143.

Both contentions rest on misunderstandings of the Constitution's due process principles. First, even assuming for the sake of argument that the PACER fees are higher than statutory limits allow, that does not mean that the fees infringe on Plaintiffs' due process rights. The Fifth Amendment does not constitutionalize the precise fee limits of the E-Government Act of 2002. Rather, it guarantees individuals (who have a protected interest) a right to be heard. *Mathews*, 424 U.S. at 333. Plaintiffs do not allege that the amount of PACER fees has denied – or will imminently deny – them of a meaningful opportunity to be heard. Indeed, Plaintiffs allege that they have paid PACER fees in the past, *see* FAC ¶ 9, and they do not contend that they will stop doing so in the near future, *see* FAC. This aspect of Claim Five should be dismissed. And the same fate should befall the second allegation in this claim. The reason is simple: Due process principles do not require the creation of appeal rights. *In re Burley*, 738 F.2d 981, 987 (9th Cir. 1984) ("[T]here is no constitutional right to an appeal . . . ."); *see also Ross v. Moffitt*, 417 U.S. 600, 611 (1974) (noting that the Due Process Clause does not require states to afford criminal defendants with "any appeal at all").

**VII.    PACER Affords Plaintiffs Access to the Courts.**

The crux of Plaintiffs' sixth claim is that the AOUSC Defendants have "interfered with Plaintiff[s'] ability to write and speak about government activities by imposing an unlawful cost structure for PACER data, in violation of Plaintiffs' First Amendment rights." FAC ¶ 148. Plaintiffs also allege that the cost of PACER data has "interfered with *all* academic researchers' abilities to write and speak about government activities. . . ." FAC ¶ 149 (emphasis added). Setting aside the fact that this claim is false – if only because some government-focused academics rely on sources other than court documents as the foundation for their work (regarding, for example, Congress or the White House) – Plaintiffs lack prudential standing to raise it. Plaintiffs have not alleged (and could not establish) that they have a close relationship with "all academic

18

researchers," as would be required to do to secure third-party standing. *Kowalski*, 543 U.S. at 130.

Nor have they alleged, as they would have to in order to secure third-party standing, that there is a

hindrance to these other academics filing suit. *Id.*  All that remains, then, is Plaintiffs' First

Amendment claim regarding their own access to court filings.

This claim lacks merit because the First Amendment guarantees the public some access to

court filings, but it does not require that court records be made available to Plaintiffs at any

particular location.    The Ninth Circuit has held that there is a First Amendment right of access that

extends to "civil proceedings and associated records and documents." *Courthouse News Service v.*

*Planet*, 750 F.3d 776, 786 (9th Cir. 2014).  Mr. Greenspan, in fact, has access to court filings – and

*free* access at that:  The courthouses of the Northern District of California have public access

terminals in the Clerk's offices at which documents on PACER can be viewed for free.[9]  *See*

AOUSC, *Electronic Public Access Program Summary*, December 2012, at 3 & n.2, available at

http://www.pacer.gov/documents/epasum2012.pdf (last visited Aug. 4, 2014) (explaining that

"[e]very courthouse has public access terminals in the clerk's office to provide access to PACER"

and that "[v]iewing court records at a public access terminal is free").[10]  Plaintiffs want more than

simply free access, though; they want free access from a home computer or on a smartphone.  (An

individual with a PACER account could access court filings by these methods, but she would have

to pay for them, *unless* she had a fee waiver, *or* incurred charges of less than $15 a quarter, *or* were

accessing a judicial opinion.)  In effect, Plaintiffs claim an entitlement to free digital copies of

---

[9] Printing from the public access terminals costs $.10 per page.

[10] The Court can take judicial notice of both (1) the fact that the Northern District
courthouses have public access terminals which provide free access to PACER documents and
(2) the Electronic Public Access Program Summary.  *In re Icenhower*, --- F.3d ---,  2014 WL
2883884, at *10. (9th Cir. 2014) (citing Fed. R. Evid. 201(d) for the proposition that a court can
take judicial notice of facts that are not reasonably subject to dispute); *Bishop v. C & P Trucking
Co.*, 840 F.Supp. 118, 119 (N.D. Ala. 1993) (taking judicial notice of facts about courthouse);
*United States v. Hom*,  --- F. Supp. 2d ---, 2014 WL 2527177, at *4 (N.D. Cal. June 4, 2014)
(holding that court could take judicial notice of facts available on government websites).

court records.  But courts have rejected litigants' claims that they have a right to "obtain court documents without payment."  *Bacon v. Reyes*, 2013 WL 1405843, at *4 (D. Nev. April 4, 2013); *see Johnson v. Moore*, 948 F.2d 517, 521 (9th Cir. 1991) ("A denial of free photocopying does not amount to a denial of access to the courts."); *cf. Jones v. Franzen*, 697 F.2d 801, 803 (7th Cir. 1983) (concluding that as "broad as the constitutional concept of liberty is, it does not include the right to xerox").  And there is no reason to believe that the First Amendment grants researchers a greater right of access to court documents than it furnishes to litigants – and mandates a government subsidy in the process.  This claim, too, should be dismissed.

### VIII.   The E-Government Act Claim Lacks a Cause of Action and Waiver of Sovereign Immunity.

Plaintiffs allege that the PACER "fee structure has violated and continues to violate the E-Government Act of 2002 . . . ." FAC ¶ 155.  This claim fails for lack of both (1) a waiver of sovereign immunity and (2) a private right of action.  *See generally Mills v. United States*, 742 F.3d 400, 406 (9th Cir. 2014) (explaining that claim must be dismissed if there is no applicable waiver of sovereign immunity); *Logan v. U.S. Bank Nat'l Ass'n*, 722 F.3d 1163, 1169-73 (9th Cir. 2013) (dismissing claims because a statute did not create a private right of action).

The E-Government Act of 2002 does not create a private right of action or waive the United States' Sovereign Immunity.  *See* E-Government Act of 2002, Pub. L. No. 107-347.  And the Administrative Procedure Act, which offers a waiver and cause of action of last resort for suits against the federal government, does not aid Plaintiffs.  It authorizes review of certain final "agency" actions, 5 U.S.C. § 704, but it defines the term "agency" to exclude the "courts of the United States."  5 U.S.C. § 701(b)(1)(B) (stating that the term "'agency' . . . does not include . . . the courts of the United States").  The AOUSC is a part of the courts.  28 U.S.C. §§ 601, 604 (creating the office and setting its duties).  Thus, its actions are not subject to review under the

APA.  *Muirhead v. Mecham*, 427 F.3d 14, 18 (1st Cir. 2005) ("The Administrative Office of the United States Courts is a part of the judicial branch, so the Director's actions are not subject to judicial review under the terms of this waiver."); *Tashima v. Administrative Office of the U.S. Courts*, 719 F. Supp. 881, 886 (C.D. Cal. 1989) ("[T]he Court concludes that the Administrative Office is not an 'agency' within the meaning of the APA."); *McKissock & Hoffman v. Waldron*, 2011 WL 3438333, *2 (E.D. Pa. Aug. 5, 2011) (concluding that the AOUSC is not covered by the APA); *Novell, Inc. v. United States*, 109 F. Supp. 2d 22, 25-27 (D.D.C. 2000) (same); *Seltzer v. Foley*, 502 F. Supp. 600, 602 n.2 (S.D.N.Y 1980) (same); *see also In re Fidelity Mortg. Investors*, 690 F.2d 35, 38 (2d Cir. 1982) ("If legislative history has any significance at all, it is clear that Congress intended the entire judicial branch of the Government to be excluded from the provisions of the Administrative Procedure Act."); *Pickus v. U.S. Bd. of Parole*, 507 F.2d 1107, 1112 (D.C. Cir. 1974) (holding that the United States Probation Service is excluded from the APA because it is an "auxiliary of the courts"); *United States v. Frank*, 864 F.2d 992, 1013-14 (3d Cir. 1988) (explaining that the U.S. Sentencing Commission is not subject to the APA because it is part of the courts); *Washington Legal Foundation v. U.S. Sentencing Com'n*, 17 F.3d 1446, 1449, (D.C. Cir. 1994) (suggesting that the APA's "exemption applies to the entire judicial branch – at least to entities within the judicial branch that perform functions that would otherwise be performed by courts").[11]

---

[11] This analysis demonstrates that there is no waiver of sovereign immunity permitting Plaintiffs' constitutional and statutory claims against the AOUSC in counts four through seven; the memorandum has already explained that, with respect to counts one through three, there is no waiver of sovereign immunity for claims against the Northern District.  With respect to the first seven claims against the individual Defendants, Plaintiffs could assert that *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682 (1949), creates a waiver of sovereign immunity.  But they would be incorrect.  *Larson* explains that sovereign immunity does not attach to suits against individual government officials who (i) have acted under an unconstitutional law or have acted unconstitutionally under a constitutional law, or (ii) who have otherwise acted beyond the scope of their authority.  *Id.* at 689, 690-92, 96-97.  With regard to Plaintiffs' constitutional claims against

21

Two decisions – a 1981 Pennsylvania district court opinion, *Goldhaber v. Foley*, 519 F.

Supp. 466, 480-81 (E.D. Pa. 1981), and a Court of Federal Claims opinion, *Novell, Inc. v. United*

*States*, 46 Fed. Cl. 601, 612 (Fed. Cl. 2000) – have concluded that the APA applies to the

Administrative Office of the United States *Courts*. But these opinions are outliers: They

contradict the weight of authority, which is set out in the preceding paragraph. And they "ignore[ ]

the legislative history of the APA." *Novell, Inc. v. U.S.*, 109 F. Supp. 2d at 26 (D.D.C. 2000).

"That history indicates that the term 'agency' was supposed to have substantially the same meaning

in the APA as in two preexisting statutes: the Federal Reports Act of 1942 . . . and the Federal

Register Act. . . . Both definitions [ ] defined 'agency' in terms of the branch of government in

which the entity was (or was not) located . . . ." *Washington Legal Foundation*, 17 F.3d at 1449.

Accordingly, the court should decline to follow these two opinions and conclude that the APA

exception for the Courts encompasses the AOUSC.

### IX.   The Federal Tort Claims Act Fails Because Plaintiffs Did Not Sue the U.S. and Did Not Allege Any Actionable Torts.

Plaintiffs allege in their Eighth Claim that the AOUSC Defendants have violated the

Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b), because they "have caused the conversion

of $1,077.56 of United States currency," FAC ¶ 159, by overcharging Plaintiffs for access to

---

the individuals, the question of waiver under *Larson* collapses into the assessment of the constitutionality of the challenged rule or action (because a waiver exists only if the rule or action is unconstitutional). *See Washington Legal Foundation v. U.S. Sentencing Com'n*, 89 F.3d 897, 902 (D.C. Cir. 1996). This memorandum has already established that Plaintiffs' constitutional challenges are meritless. It follows, then, that there is no waiver of sovereign immunity with respect to the constitutional claims against individuals (*i.e.*, the first six counts, FAC ¶¶ 100-152). As to Plaintiffs' statutory claims against the individual Defendants in count seven, they allege simply that Defendants charged fees in excess of what was necessary, in violation of E-Government Act. FAC ¶¶ 153-164. If true, this would be, at most, a simple "mistake of law or fact"; it would not "mean that an officer of the government has exceeded the scope of his authority." *United States v. Yakima*, 806 F.2d 853, 859-60 (9th Cir. 1986) (explaining that action based on a mistake of law or fact does not necessarily constitute an action in excess of authority). Thus, there is no waiver of sovereign immunity for any of Plaintiffs' first seven claims.

documents on PACER, *id.* ¶ 49.  They also allege that the AOUSC Defendants have committed other "torts" by overcharging for PACER access, namely, "theft of funds, wire fraud and/or bank fraud."  *Id.* ¶ 163.

The Court lacks jurisdiction over this claim, which also lacks merit.  With exceptions, the FTCA is a waiver of sovereign immunity which makes the United States liable for damages for loss of property "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with [ ][state tort law]."  28 U.S.C. § 1346(b)(1).  A key qualifier in the previous sentence is that the FTCA makes the "United States" liable for damages.  The requirement that claims be brought against the United States is a jurisdictional prerequisite and, accordingly, interpreted strictly:  The United States – not an arm of the government – must be a party to the suit.  *F.D.I.C. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998).  In this case, Plaintiffs have failed to name the United States as a party and have included only the AOUSC Defendants.  Accordingly, the Court does not have jurisdiction and the claim should be dismissed. *See id.* at 706-07 (holding that an FTCA claim should be dismissed for lack of jurisdiction because the named party was the Federal Deposit Insurance Corporation); *Kennedy v. United States Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir.1998) (holding that an FTCA suit was properly dismissed when it was filed against the Postal Service and not the United States).

Even if Plaintiffs could surmount this jurisdictional hurdle, their claim would fail.  Plaintiffs accuse the AOUSC of committing the tort of conversion by overcharging for access to PACER.  FAC ¶¶ 159, 49.  But overcharging (even if it occurred) does not constitute conversion under California law.  *E.g., Williamson v. Reinalt-Thomas Corp.*, 2012 WL 1438812, at *5 (N.D. Cal. April 25, 2012) (holding that overcharging does not constitute conversion); *Gutierrez v. Wells Fargo*, 622 F. Supp. 2d 946, 956 (N.D. Cal. 2009) (same).  Plaintiffs also accuse the AOUSC of "theft of funds."  FAC ¶ 163.  The closest tort to "theft of funds" is civil theft, which is a synonym

23

for conversion – and thus a dead end for Plaintiffs.  *Lance v. Adams*, 2011 WL 1813061, *5 (E.D. Cal. May 6, 2011) (equating "civil theft" to "conversion").  Finally, Plaintiffs accuse the AOUSC defendants of committing "wire fraud and/or bank fraud."  FAC ¶ 163.  The closest tort in California is probably common law fraud.  A claim for common law fraud must "include: (1) a misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) resulting damage."  *Lincoln Alameda Creek v. Cooper Indus., Inc*., 829 F. Supp. 325, 330 (N.D. Cal. 1992).  Given these requirements, the Court would be prohibited from exercising jurisdiction over Plaintiffs' claim by 28 U.S.C. § 2680, the "intentional torts exception" to the FTCA, which states that the FTCA will not apply to claims "arising out of … misrepresentation." *United States v. Shearer*, 473 U.S. 52, 52, 56, (1985); also *Owyhee Grazing Ass'n, Inc. v. Field*, 637 F.2d 694, 697 (9th Cir. 1981) (stating that "claims against the United States for fraud or misrepresentation by a federal officer are absolutely barred by 28 U.S.C. § 2680(h) [of the FTCA]").

## **CONCLUSION**

For the reasons stated above, the Court should dismiss Plaintiffs' suit.


Dated: August 4, 2014                                    Respectfully submitted,

                                                                        STUART F. DELERY
                                                                        Assistant Attorney General

                                                                        MELINDA L. HAAG
                                                                        United States Attorney

                                                                        ARTHUR R. GOLDBERG
                                                                        Assistant Director, Federal Programs Branch

                                                                         */s/ Justin M. Sandberg*
                                                                        JUSTIN M. SANDBERG, IL Bar No.
                                                                        6278377
                                                                        Trial Attorney
                                                                        U.S. Department of Justice
                                                                        Civil Division, Federal Programs Branch
                                                                        20 Mass. Ave. NW, Rm. 7302

Washington, D.C. 20001
Telephone:     (202) 514-5838
Facsimile:     (202) 616-8202
Justin.Sandberg@usdoj.gov
*Counsel for Defendants*

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES
Case No.: 5:14-cv-2396

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2014 a copy of the attached (1) Notice of Motion and Motion to Dismiss Amended Complaint and (2) Proposed Order was placed in a mailroom at the Department of Justice for service by first-class mail on the following non-CM/ECF participants at the listed address:

Aaron Greenspan
Think Computer Foundation
Think Computer Corporation
1132 Boranda Avenue
Mountain View, CA 94040-3145.

I further certify that on August 4, 2014 the attached (1) Notice of Motion and Motion to Dismiss Amended Complaint and (2) Proposed Order were filed using CM/ECF and therefore electronic service is expected to be made on the following:

Bety Javidzad
Venable LLP 2049 Century Park East
Suite 2100
Los Angeles, CA 90067.

I certify under penalty of perjury that the forgoing is true and correct.

Dated:  August 4, 2014                    /s/ Justin M. Sandberg
                                          JUSTIN M. SANDBERG
                                          Trial Attorney
                                          U.S. Department of Justice
                                          Civil Division, Federal Programs Branch

NOTICE OF MOTION AND MOTION TO DISMISS AMENDED COMPLAINT; MEMORANDUM OF
POINTS AND AUTHORITIES
Case No.: 5:14-cv-2396