1
2
3
4
5
6
7
8                          **UNITED STATES DISTRICT COURT**

9                          **NORTHERN DISTRICT OF CALIFORNIA**

10   AARON GREENSPAN; THINK                    CASE No. 14cv2396 JTM
     COMPUTER FOUNDATION;
11   THINK COMPUTER                            ORDER DISMISSING CORPORATE
     CORPORATION,                              PLAINTIFFS FOR FAILURE TO
12                                             OBTAIN LEGAL
                                Plaintiffs,    REPRESENTATION; GRANTING
13                                             ALL MOTIONS TO DISMISS;
          vs.                                  DENYING MOTION FOR LEAVE TO
14                                             FILE SECOND AMENDED
                                               COMPLAINT; GRANTING LEAVE
15                                             TO AMEND
     ADMINISTRATIVE OFFICE OF
16   THE UNITED STATES COURTS;
     MICHEL ISHAKIAN, in her official
17   capacity on behalf of the
     Administrative Office of the United
18   States Courts; WENDELL SKIDGEL,
     in his official capacity on behalf of the
19   Administrative Office of the United
     States; UNITED STATES DISTRICT
20   COURT FOR THE NORTHERN
     DISTRICT OF CALIFORNIA;
21   RICHARD WIEKING, in his official
     capacity on behalf of the United States
22   District Court for the Northern District
     of California; CLAUDIA WILKEN, in
23   her official capacity on behalf of the
     Untied States District Court for the
24   Northern District of California; and
     AMERICAN BAR ASSOCIATION,
25
                                Defendants.
26

27        On August 21, 2014, the court issued an Order to Show Cause ("OSC") to

28   Plaintiffs Think Computer Foundation ("Foundation") and Think Computer

1   Corporation (collectively "Corporate Plaintiffs") to show cause why they should not

2   be dismissed as parties for failure to obtain counsel.  (Ct. Dkt. 44).  Having carefully

3   considered Plaintiffs' response to the OSC, (Ct. Dkt. 48), Plaintiffs' response to an

4   earlier OSC issued by the Honorable Judge Beth Labson Freeman, (Ct. Dkt. 24), the

5   response to the OSC filed by defendant American Bar Association ("ABA"), (Ct. Dkt.

6   50), the court record and pertinent legal authorities, the court dismisses Corporate

7   Plaintiffs from this action without prejudice for failure to obtain legal representation.

8   Corporate Plaintiffs will be dismissed from this action with prejudice unless, within 60

9   days of entry of this order, (1) Corporate Plaintiffs retain legal representation and (2)

10  retained counsel files a Notice of Appearance.

11      This order also addresses the motions to dismiss filed by Defendants

12  Administrative Office of the United States Courts ("AO"); Michel Ishakian, in her

13  Official Capacity on behalf of the AO; Wendell Skidgel, in his official capacity on

14  behalf of the AO; United States District Court for the Northern District of California

15  ("CAND"); Richard Wieking, in his official capacity on behalf of the CAND; Claudia

16  Wilken,[1] in her official capacity on behalf of the CAND; and the American Bar

17  Association ("ABA").  Plaintiffs oppose all motions.  For the reasons set forth below,

18  the court grants all motions to dismiss, dismisses the First through Seventh and Ninth

19  causes of action with prejudice, dismisses the Eighth cause of action without prejudice,

20  and grants Plaintiff 30 days leave to amend from the date of entry of this order to file

21  an amended Eighth cause of action in a Third Amended Complaint.  The court also

22  denies Plaintiffs' motion for leave to file the proposed Second Amended Complaint.

23                              **BACKGROUND**

24  The Plaintiffs

25      On May 23, 2014, Corporate Plaintiffs commenced this action seeking injunctive

26

27

28      [1] Although not named in the First Amended Complaint, Chief Judge Wilken is
    named in the Second Amended Complaint.

1   and declaratory relief.[2]   Among other things, the operative First Amended Complaint

2   ("FAC"), filed on June 16, 2014, added Aaron Greenspan as a party plaintiff. (Ct. Dkt.

3   23).[3]   Greenspan "is the founder, President, CEO, Chairman of the Board of Directors,

4   and 100% owner of Think Computer Corporation, as well as the founder, President,

5   and Chairman of the Board of Directors of Think Computer Foundation." (FAC ¶17).

6   Think Foundation is an Ohio non-profit corporation recognized by the Internal

7   Revenue Service as a tax-exempt organization under §501(c)(3) of the Internal

8   Revenue Code." (FAC ¶18).   Think Foundation operates a website (PlainSite.org)

9   "that compiles government information, including information from the Courts via

10  PACER, in order to make such information more accessible to the general public." Id.

11  Think Corporation is incorporated in Delaware with its principal place of business in

12  Mountain View, California.   Think Corporation developed the software used by

13  Foundation in operating PlainSite.org and it "plays an active role in its management."

14  (FAC ¶19).

15  The Defendants

16      Defendant AO is a federal governmental entity that "oversees PACER in all

17  respects." (FAC ¶20).[4]   The central PACER website is one of many individual PACER

18  websites "that the various district, bankruptcy, and appellate courts each maintain with

19  some degree of autonomy." (FAC ¶5).   Defendant Michel Ishakian, sued in his official

20  capacity, is an alleged federal employee of the AO, tasked with managing PACER, who

21  personally communicated with Greenspan concerning PACER's fee structure.  (FAC

22  ¶21).   Defendant Wendell Skidgel, sued in his official capacity, is an alleged Senior

23  _____

24  [2] The court highlights that the term "Corporate Plaintiffs" refers to Think
    Computer Foundation and Think Computer Corporation, "Greenspan" or "Plaintiff"

25  refers to plaintiff Aaron Greenspan, and "Plaintiffs" to all three plaintiffs.

26  [3] The court notes that the Second Amended Complaint, addressed herein, is
    virtually identical to the FAC (except as to certain legal theories).  The differences

27  between the complaints are not otherwise relevant to the present order.

28  [4] Electronic access to public court filings in federal district and appellate courts
    is provided by a system known as PACER or Public Access to Court Electronic
    Records.

Attorney Advisor for the AO and personally communicated with Greenspan concerning PACER and its fee structure.  Defendant CAND "is a federal district court in the Ninth Circuit with control over its own Local Rules."  (FAC ¶23).  Defendant Richard Wieking, sued in his official capacity, is the Clerk of Court of the CAND.  The Honorable Judge Claudia Wilken, sued in her official capacity, is the Chief Judge of the CAND.  She is allegedly responsible for "maintaining and setting the direction of the District Court's Local Rules."  (FAC ¶25).  Defendant ABA is the alleged "sole entity responsible for the accreditation of law schools within the United States" and "has participated jointly and severally with various state bar associations and courts to promulgate, validate, and enforce its anti-competitive policies."  (FAC ¶26).

The Claims

The First Claim, asserted against Chief Judge Wilken, Clerk of Court Wieking, and the CAND (collectively the "CAND Defendants"), is for the alleged violation of 42 U.S.C. ¶1983 based upon the adoption of L.R. 3-9(b), which requires corporations to obtain legal representation, and L.R. 5-1(b), which requires pro se litigants to seek and obtain permission from the judge assigned to their case in order to become an ECF user.  Such conduct allegedly violates the equal protection clause of the Fifth Amendment.[5]  (Ct. Dkt. 34 ¶2).  The Second Claim, asserted against the CAND Defendants, is based upon the same conduct described in the First Claim but allegedly arises under the Due Process clause of the Fifth Amendment.  Id.  The Third Claim, asserted against the CAND Defendants, is for the alleged violation of 42 U.S.C. §1983 based upon the adoption of L.R. 3-9(b).  Such conduct allegedly violates the First Amendment under the theory that the Corporate Plaintiffs may represent themselves in court proceedings pro se as "a form of political expression and association."  (FAC ¶123).

The Fourth Claim, asserted against Defendants Ishakian, Skidgel, and the AO

---

[5] The proposed SAC identifies the Fifth Amendment as the constitutional amendment allegedly violated by Defendants, and not the Fourteenth Amendment as alleged in the FAC.  (Ct. Dkt. 34).

(collectively the "AO Defendants"), is for the alleged violation of 42 U.S.C. §1983 based upon L.R. 5-1(b) and the fee structure imposed by the AO for obtaining copies of the court docket, charging $0.10 per page.  Such conduct allegedly violates the "Equal Protection Clause of the Fifth Amendment."[6]  The Fifth Claim, asserted against the AO Defendants, is based upon the same conduct described in claim four but allegedly arises under the Due Process Clause of the Fifth Amendment.  The Sixth Claim, asserted against the AO Defendants, alleges that they violated his First Amendment rights by "interfer[ring] with Plaintiff's ability to write and speak about government activities by imposing an unlawful cost structure for PACER data." (FAC ¶148).  The Seventh Claim, asserted against the AO Defendants, alleges that the copying fee of $0.10 per page violates the "E-Government Act of 2002, which Congress intended to promote access to public domain information, by being unreasonable and far in excess of the extent necessary to operate and improve PACER." (FAC ¶155).  The Eighth Claim, asserted against the AO Defendants, alleges a Federal Tort Claims Act ("FTCA") claim, 28 U.S.C. §1346, and seeks the return of the copying costs ($1,077.56) of PACER documents.

The Ninth Claim, asserted against the ABA, alleges a violation of the Sherman Act, 15 U.S.C. §2, based upon allegations that the ABA limits "the number of ABA-accredited law schools issuing degrees," lobbies for "Restrictive Local Rules," and "has monopoly power in the submarket for individuals capable of representing corporations before the federal courts, as well as in the market for legal professionals." (FAC ¶166).  As a consequence of the alleged "monopoly power," otherwise qualified prospective legal professionals allegedly cannot obtain a license to practice law without attending "a small number of extraordinarily expensive ABA-certified law schools." (FAC ¶168).  The ABA also bills at hourly rates ranging from $250 to $1,000 per hour, participated in schemes designed to exclude non-attorneys from having access to

---

[6] The reference to the "Equal Protection Clause of the Fifth Amendment" is Plaintiffs' characterization of the nature of this claim.  (SAC at p.28:19-21; 33:15-16). For consistency, the court repeats this phrase throughout this order.

justice, and limited the legal profession such that the majority of Americans do not have access to affordable and necessary legal assistance.  (FAC ¶168).

Plaintiffs allege that they have spent in excess of $1,000 in expenses related to PACER.  In broad brush, Plaintiff argues that the PACER fees

> are being collected in violation of the E-Government Act of 2002, [and that] PACER is a colossal mess from a technological perspective that routinely overcharges users for errors, failed search results, and documents that the system has recorded as already having been purchased. Just as importantly, CM/ECF, the e-filing component of PACER, offers parties to a case one free copy of each document in that case - except when the party does not have access, which is often.

(Ct. Dkt. 41, Oppo. at p.2:12-17).  The AO charges users $0.10 per page for PACER data and $2.40 per audio file.  (FAC ¶27).  The FAC alleges that the PACER fee schedule states that "No fee is charged for access to judicial opinions."  This is allegedly false because "PACER very often charged $0.10 per page for access to judicial opinions."  (FAC ¶30).

The FAC generally alleges two broad categories of wrongs, one arising from the PACER system and the other from the requirement that corporate entities must be represented by an attorney as required by federal law and Civil Local Rule 3-9(b). The FAC alleges that the fees collected through PACER violate the E-Government Act of 2002. The controlling statute provides "[t]he fees and costs to be charged and collected in each court of appeals shall be prescribed from time to time by the Judicial Conference of the United States. Such fees and costs shall be reasonable and uniform in all the circuits."  28 U.S.C. §1913.  The FAC alleges that the fees charged are excessive and cites a Princeton University Center report which identifies that, in 2010, PACER's expenses were about $25 million and its revenues of $90 million thus resulting in a profit of $65 million.  (FAC ¶¶34 - 35).  The FAC alleges that the practice of overcharging for PACER continues to the present date.  Greenspan's request for a refund of PACER fees has been denied by the AO.  (FAC ¶54).

The other central claim is that corporate entities should be able to represent themselves in federal court.  The FAC broadly alleges a First Amendment right to self-

representation by fictitious entities. In addition, the requirement for legal representation is financially burdensome to corporations, particularly those classified as "small business." (FAC ¶¶60 - 66).

The essence of the claim against the ABA is that the ABA participates in proposed changes to the Federal Rules of Civil Procedure and Local Rules for "the true purposes . . . to attempt to increase demand for and exclude competition with attorneys, whose private interests are collectively represented by Defendant ABA." (FAC ¶96). Through these actions, the ABA allegedly conspires with its members "to impose restrictive Local Rules." (FAC ¶97).

<u>Procedural History</u>

On June 11, 2014, Judge Freeman issued an Order to Show Cause why the original complaint, filed by the Corporate Plaintiffs only, should not be dismissed because the Corporate Plaintiffs were not represented by counsel. On June 16, 2014 the FAC was filed, adding Greenspan as a plaintiff. On July 17, 2014, Judge Freeman issued an order, noting that Corporate Plaintiffs could appear only through licensed counsel. However, as Greenspan was now a party to the action, the court left "for another day the determination as to whether the Corporate Plaintiffs may appear without counsel properly licensed to practice law before this Court." (Ct. Dkt. 33).

On July 23, 2014, Plaintiffs filed a proposed Second Amended Complaint ("SAC") adding Chief Judge Wilken as a party defendant. Shortly thereafter, Judge Freeman recused herself from the case and, on August 5, 2014, the Executive Committee for the Northern District of California ordered that this case be reassigned to an out-of-district judge. (Ct. Dkt. 39). On August 8, 2014, the case was reassigned by the Executive Committee to the undersigned. (Ct. Dkt. 40).

On August 21, 2014, the undersigned granted Greenspan's request for Permission for Electronic Case Filing pursuant to Northern District Civil L.R. 5.1. The court denied the motion with respect to the Corporate Plaintiffs because they had not retained legal representation. On the same date, the court also issued an OSC to the

1   Corporate Plaintiffs to show cause why they should not be dismissed without prejudice

2   for failure to retain legal representation.  The court also set a briefing schedule on

3   Plaintiffs' Motion for Leave to file the SAC and the various motions to dismiss.  The

4   present order addresses the OSC and all pending motions.

5                                    **DISCUSSION**

6   **Legal Standards**

7        Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in

8   "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir.

9   1981).  Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a

10  "cognizable legal theory" or sufficient facts to support a cognizable legal theory.

11  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990).  Courts should

12  dismiss a complaint for failure to state a claim when the factual allegations are

13  insufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp.

14  v. Twombly, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly

15  suggest[]" that the pleader is entitled to relief); Ashcroft v. Iqbal, 556 U.S. 662 (2009)

16  (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the

17  mere possibility of misconduct).  "The plausibility standard is not akin to a 'probability

18  requirement,' but it asks for more than a sheer possibility that a defendant has acted

19  unlawfully." Id. at 678.  Thus, "threadbare recitals of the elements of a cause of action,

20  supported by mere conclusory statements, do not suffice." Id.  The defect must appear

21  on the face of the complaint itself.  Thus, courts may not consider extraneous material

22  in testing its legal adequacy.  Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th

23  Cir. 1991).  The courts may, however, consider material properly submitted as part of

24  the complaint. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555

25  n.19 (9th Cir. 1989).

26       Finally, courts must construe the complaint in the light most favorable to the

27  plaintiff. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116

28  S. Ct. 1710 (1996).  Accordingly, courts must accept as true all material allegations in

the complaint, as well as reasonable inferences to be drawn from them. <u>Holden v. Hagopian</u>, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. <u>In Re Syntex Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996).

**The Order to Show Cause**

In response to the OSC, Greenspan contends that legal representation for the Corporate Plaintiffs is too expensive, burdensome, and not necessary in today's legal environment. Further, Greenspan argues that Corporate Plaintiffs, after <u>Citizens United v. Federal Election Com'n</u>, 588 U.S. 310 (2010), have the First Amendment right to self-representation.[7] These arguments are not persuasive and run counter to well-established and precedential authorities.

As noted by the Supreme Court, "[i]t has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel." <u>Rowland v. California Men's Colony, Unit II Men's Advisory Council</u>, 506 U.S. 194, 201-02 (1993) (quoting <u>Osborn v. President of Bank of United States</u>, 9 Wheat. 738, 829, 6 L.Ed. 204 (1824)). This well-established rule applies equally to corporations or to associations. <u>See</u> <u>In re Highley</u>, 459 F.2d 554, 555 (9th Cir. 1972) (corporations); <u>McShane v. United States</u>, 366 F.2d 286, 288 (9th Cir. 1996) (a non-attorney pro se plaintiff may not represent any other party); <u>United States v. High Country Broad Co., Inc.</u>, 3 F.3d 1244, 1245 (9th Cir. 1993) ("A corporation may appear in federal court only through licensed counsel."). This same venerable common law rule exists in the State of California. "[A] corporation, unlike a natural person, cannot represent itself before courts of record <u>in propria persona</u>, nor can it represent itself through a corporate officer, director or other employee who is not an attorney. It must be represented by licensed counsel in proceedings before courts of record." <u>CLD

---

[7] Plaintiff specifically challenges the constitutionality of L.R. 3-9(b) ("A corporation, unincorporated association, partnership or other such entity may appear only through a member of the bar of this Court.") which requires corporate entities to be represented by legal counsel.

1   Const. Inc. v. City of San Ramon, 120 Cal.App.4th 1141, 1145 (2004).

2          Absent contrary legal authority, this court is not free to disregard established

3   precedent.[8]   While Greenspan cites several lower court authorities which have

4   permitted certain individuals to make limited appearances on a fictitious entity's behalf,

5   those authorities have no precedential value and represent aberrant cases.  The Supreme

6   Court referred to one of the authorities cited in the FAC,[9] In Re Holliday's Tax Serv.,

7   Inc., 417 F.Supp. 182 (E.D.N.Y. 1976), as one of those "aberrant cases" that does not

8   uniformly hold that "corporations, partnerships, or associations" may "appear in federal

9   court" only through a licensed attorney.  Rowland, 506 U.S. at 202, n.5.

10          The court also rejects Greenspan's argument that Citizen's United created a First

11   Amendment free speech right for corporations or associations to appear in federal court

12   without legal representation.  Greenspan argues that Corporate Plaintiffs may advocate

13   for a change in the law with respect to legal representation and that such corporate

14   political speech "involves issues of federal policy and its impact on businesses and

15   non-profit organizations."  (Ct. Dkt. 48 at ¶9).  There is no doubt that the Corporate

16   Plaintiffs or Greenspan may advocate issues of federal policy and its impact on

17   businesses and non-profit organizations.  Plaintiffs may, among many other things,

18   lobby for changes in the law, write editorials, and organize protests against the law, all

19   on behalf of the Corporate Plaintiffs.  However, the issue before the court is a narrower

20   one: Whether a non-lawyer individual appearing pro se in this action may provide legal

21   representation to the Corporate Plaintiffs.  The answer to this issue is a resounding no.

22   Citizens United does not undermine this court's determinations.

23          In Citizens United, the Supreme Court held that the First Amendment prohibited

24   ───────────────

25   [8] The court notes that Greenspan dedicates a substantial portion of his response
     to the OSC to a critique of the legal profession.  (Ct. Dkt. 124 at pp. 9:3 - 16:11, Exh.

26   A).  This argument has no bearing on whether a fictitious business entity may appear
     in a legal proceeding without legal representation.

27   [9] The court notes that the FAC does not comply with Fed.R.Civ.P. 8(a).  Rule
     8(a) requires a complaint to set forth "a short and plain statement of the claim showing

28   that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Legal argument in a
     complaint is not appropriate under federal pleading rules.

1   the government from restricting independent political expenditures by a nonprofit

2   corporation.  Applying this principle to the Corporate Plaintiffs, they are free to spend

3   any amount of money they desire in support of political causes or candidates (although

4   they are limited in the amount of money given directly to candidates). The only legal

5   authority located by the parties or this court which addressed the impact of <u>Citizens</u>

6   <u>United</u> on a pro se's ability to represent corporate entities rejected such a notion.

7   <u>Timberline Builders, Inc. v. Donald D. Jayne Trust</u>, 786 N.W.2d 873 at *3 (Iowa 2010).

8   The Iowa Court of Appeals aptly noted "[w]hen a business accepts the advantages of

9   incorporation, it must also bear the burdens, including the need to hire counsel to sue

10   or defend in court." <u>Id.</u> (quoting <u>Woodford Mfg. Co. v. A.O.Q., Inc.</u> 772 P.2 652, 654

11   (Colo. App. 1988), <u>cert. denied</u>, 797 P.2 748 (Colo. 1990)).  <u>Citizens United</u> is simply

12   not helpful to Corporate Plaintiffs.[10]

13       In sum, the court dismisses the Corporate Plaintiffs from this action without

14   prejudice.  Corporate Plaintiffs will be dismissed from this action with prejudice

15   unless, within 60 days of entry of this order, (1) Corporate Plaintiffs retain legal

16   representation and (2) retained counsel files a Notice of Appearance.

17   **The CAND Defendants**

18       Plaintiff alleges three claims against the CAND Defendants based upon the

19   alleged adoption of L.R. 3-9(b), which requires corporations to obtain legal

20   representation, and L.R. 5-1(b), which requires pro se litigants to seek and obtain

21   permission from the judge assigned to their case in order to become an ECF user.  The

22   First Claim arises from the enactment of these Local Rules and allegedly violates the

23   "Equal Protection Clause of the Fifth Amendment."  The Second Claim is based upon

24   the same conduct described in the First Claim but allegedly arises under the Due

25

26       [10] The court notes that Plaintiff appears to be under a misconception concerning
     the role of the First Amendment in federal court.  Federal courts are not public forums.
27   The Federal Rules of Evidence severely limit speech to "relevant" evidence.  Further,
     legal issues, with certain limited exceptions not applicable in the present case, are
28   constrained by legal precedent, whether arising under constitutional, statutory, or
     common law.

Process Clause of the Fifth Amendment. The Third Claim is based upon the adoption of L.R. 3-9(b). These claims fail on many different levels.[11] Each claim challenges the constitutionality of L.R. 5-1(b).

The court dismisses all three causes of action for several reasons. First, Plaintiff does not identify the legal basis for his claims. Plaintiff brings these claims pursuant to 42 U.S.C. §1983. However, as acknowledged by Plaintiff, this section only applies to state actors and the CAND Defendants are federal actors. Id. The claims also do not arise under Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) because the CAND Defendants are sued in their official, and not individual, capacities. See FDIC v. Meyer, 510 U.S. 471, 486 (1994) (no Bivens claims against federal agencies); Consejo de Desarrollo Economico de Mexicali v. United States, 482 F.3d 1157, 1173 (9th Cir. 2007) (no Bivens claims against agents in their official capacity). The failure to identify the legal basis for the claims alleged in the complaint warrants dismissal of these claims.

Second, the CAND Defendants are entitled to legislative immunity in promulgating local rules. The promulgation of local court rules is a legislative function. In Supreme Court of Virginia v. Consumers Union of U.S., Inc., 446 U.S. 719 (1980), the Supreme Court held that the Virginia Supreme Court, and its chief justice, sued in his official capacity, were immune from suit in adopting local bar rules. Id. at 734. While immunity is appropriate where judges act in an authorized legislative capacity, immunity does not extend to "insulate judges from declaratory or injunctive relief with respect to their judicial acts." Id. 735. Here, there are no allegations that the CAND Defendants have acted in an adjudicative capacity. Accordingly, as currently pleaded, CAND Defendants are entitled to immunity for these causes of

---

[11] At the outset, the court dismisses those portions of the First through Third causes of action challenging the constitutionality of L.R. 3-9(b), because (1) as set forth above, the requirement that fictitious entities may appear in legal proceedings only through legal representation is constitutional and (2) Plaintiff lacks standing to bring a challenge to L.R. 3-9(b) because he is an individual appearing pro se on his own behalf and not the Corporate Plaintiffs' legal counsel. L.R. 3-9(b) simply does not apply to Greenspan.

1  action.

2      Finally, Plaintiff would not prevail on the merits.  L.R. 5-1(b) provides:

3      A case that involves a pro se party is subject to electronic filing, unless it
       is a sealed case. However, the pro se party may not file electronically
4      unless the pro se party moves for and is granted permission by the
       assigned judge to become an ECF user in that case. Parties represented by
5      counsel in a case involving a pro se party must file documents
       electronically and serve them manually on the pro se party unless the pro
6      se party has been granted permission to become an ECF user.

7  Under either equal protection or due process principles, the rule passes constitutional

8  muster.

9      "The Equal Protection Clause does not forbid classifications.  It simply keeps

10 governmental decisionmakers from treating differently persons who are in all relevant

11 respects alike. Evidence of different treatment of unlike groups does not support an

12 equal protection claim."  <u>Wright v. Incline Village General Improvement Dist.</u>, 665

13 F.3d 1128, 1140 (9th Cir. 2011) (citations omitted).  Where the local rule does not

14 violate constitutionally protected fundamental rights and does not operate to the

15 "detriment of a suspect class, the only requirement of equal protection is that [the local

16 rule] be rationally related to a legitimate governmental interest."  <u>Harris v. McRae</u>, 448

17 U.S. 297, 326 (1980).

18     Here, the CAND, like other judicial districts, could have rationally concluded

19 that a case-by-case review was a reasonable and rational means to account for the

20 diverse backgrounds, technical abilities, and economic realities of pro se litigants.

21 While virtually every attorney has access to computer technology (pursuant to L.R. 5-1

22 all attorneys must file electronically), a number of pro se litigants lack access to a

23 computer (i.e. individuals who may be incarcerated, economically distressed, or

24 intellectually challenged) or the skills needed to maneuver through the electronic case

25 filing system.  Seen in this light, there is a reasonable and rational basis to require pro

26 se litigants who desire to file electronically to make a simple application to the court

27 for leave to file electronically.  The court concludes that there is no fundamental right

28 to file documents electronically or identifiable suspect class.  Accordingly, L.R. 5-1(b)

1   is rationally related to legitimate judicial interests.

2       Whether Plaintiff asserts a substantive or procedural due process claim (the

3   complaint is unclear on this point), the claims do not survive scrutiny.  Because

4   Plaintiff cannot identify a fundamental right or suspect classification, he must

5   demonstrate that there is no rational basis for L.R. 5-1(b).  See Gallo v. U.S. Dist. Court

6   for Dist. Of Arizona, 349 F.3d 1169, 1181 (9th Cir. 2003) (local rule restricting

7   appearances to members of the forum state's bar, thus excluding out-of-state attorneys

8   from practicing law in Arizona, does not violate substantive due process); United

9   States v. Alexander, 48 F.3d 1477, 1491 (9th Cir. 2011).

10      In sum, as there are no circumstances under which Plaintiff can state a claim

11  against the CAND Defendants based upon the adoption of L.R. 5-1(b), the court

12  dismisses Claims One, Two, and Three with prejudice and without leave to amend.

13  **The AO Defendants**

14      The Fourth, Fifth and Sixth Claims

15      The Fourth, Fifth, and Sixth Claims, brought pursuant to 42 U.S.C. §1983,

16  broadly allege that the PACER fee schedule discriminates against the indigent, there

17  is no appeal process to seek a refund for PACER fees paid in violation of due process,

18  and the charging of PACER fees violates Plaintiff's First Amendment rights. These

19  claims fail for multiple reasons.

20      First, Plaintiff's legal theory, brought pursuant to 42 U.S.C. §1983 (or even if

21  Plaintiff alleged a Bivens violation) affords no relief against the AO or officials in their

22  official capacities.  See Meyer, 510 U.S. at 486 (no Bivens claims against federal

23  agencies); Consejo de Desarrollo Economico, 482 F.3d at 1173 (no Bivens claims

24  against agents in their official capacity).  Second, the AO Defendants also assert that

25  Plaintiff is not alleged to be an indigent individual and, therefore, he lacks standing to

26  argue that the PACER fee schedule discriminates against the indigent.  See Lujan v.

27  Defenders of Wildlife, 504 U.S. 555, 560 (1992).  Plaintiff does not dispute this

28  argument. Rather,  he contends that one of the Corporate Plaintiffs demonstrated a net

14cv2396

loss.  This argument is insufficient to demonstrate an actual injury because the Corporate Plaintiffs are no longer parties to this action.  Third, with respect to the Fifth Claim for a refund, the complaint fails to allege that Plaintiff personally, and not the Corporate Plaintiffs, paid for copying costs.  Fourth, Plaintiff fails to cite any authority that due process requires an agency to provide an appeal process.  See In re Burley, 738 F.2d 981, 987 (9th Cir. 1984) ("there is no constitutional right to an appeal").  Fifth, Plaintiff's claim that the fee structure violates the First Amendment is baseless.  Plaintiff, like any other person, has free access to one copy of any document filed in the case and, with respect to any other case filed in the Northern District of California (or virtually any other judicial district in the country for that matter), Plaintiff can also access any filing, except those documents filed under seal, by accessing the public terminals in the Clerks' offices.[12]  There is little, if any, burden on Plaintiff's First Amendment rights when he has free access to court documents and upon payment of the copying fee he can obtain copies of documents in those cases where he is not a party.  See Bacon v, Reyes, 2013 SL 1405843 at *4 (D. Nev. April 4, 2013); Johnson v. Moore, 948 F.2d 517, 521 (9th Cir. 1991) ("A denial of free photocopying does not amount to a denial of access to the courts.").

In sum, the court grants the motion to dismiss the Fourth through Sixth claims with prejudice and without leave to amend.

The Seventh Claim

The Seventh Claim alleges that the PACER fee structure violates the E-Government Act 2002, 44 U.S.C. §3501 et seq..  (FAC ¶163).  This claim also fails for multiple reasons.  First, the E-Government Act of 2002 does not provide a private right of action and Plaintiff fails to address this defect in his opposition.  In re French, 401 B.R. 295, 313 (E.D. Tenn. 2009) ("the E-Government Act of 2002 does not provide a private cause of action"); see Logan v. U.S. Bank Nat'l Ass'n, 722 F.3d 1163, 1169-73

---

[12] Pursuant to Federal Rule of Evidence 201 the court takes judicial notice that the Clerk's Office provides public access terminals which provide free access to PACER documents, although printing those documents cost $0.10 per page.

1    (9th Cir. 2013) (dismissing claims where the statute at issue did not provide a private
2    right of action).

3        Even if alleged, the court also notes that this claim is not reviewable under the
4    Administrative Procedures Act ("APA") because the AO is not an agency for purposes
5    of the APA.  Courts are authorized to review federal agency action.  5 U.S.C. §551(1).
6    However, it defines the term "agency" to exclude the "courts of the United States."  5
7    U.S.C. §701(b)(1)(B).  Muirhead v. Mecham, 427 F.3d 14, 18 (1st Cir. 2005) ("The
8    Administrative Office of the United States Courts is part of the judicial branch, so the
9    Director's actions are not subject to judicial review under the terms of this waiver.");
10   Tashima v. Administrative Office of the U.S. Courts, 719 F.Supp. 881, 886 (C.D. Cal.
11   1989) (the AO is not an "agency" within the meaning of the APA).

12       In sum, the court grants the motion to dismiss the Seventh Claim with prejudice
13   and without leave to amend because there are no circumstances under which Plaintiff
14   can state a claim for violation of the E-Government Act of 2002.

15       The Eighth Claim

16       The Eighth Claim alleges that the AO Defendants, by charging PACER fees, are
17   liable for "conversion, theft of funds, wire fraud and/or bank fraud" under the FTCA.
18   The FAC alleges that all Plaintiffs paid $1,077.56 in copying costs.  As with the other
19   claims alleged by Plaintiff, this claim fails on many levels.  First, Plaintiff has failed
20   to join the United States as a party.  The United States is the only party liable under the
21   FTCA.  F.D.I.C. v. Craft, 157 F.3d 697, 706 (9th Cir. 1998).  Second, the allegations
22   of "conversion, theft of funds, wire fraud, and/or bank fraud" fail to state a claim.  The
23   allegations of overcharging for copying costs do not support a claim for conversion or
24   civil theft.  See Williamson v. Reinalt-Thomas Corp., 2012 WL 1438812 at *5 (N.D.
25   Cal. April 25, 2012) (holding that overcharging does not constitute conversion).  Third,
26   with respect to "bank fraud" or "wire fraud," Plaintiff must comply with the
27   particularity requirement of Fed.R.Civ.P. 9(b), something Plaintiff fails to do.  Finally,
28   claims for misrepresentation or fraud are barred by 28 U.S.C. §2680(h).  Accordingly,

1   this claim necessarily fails.

2       The court grants the motion to dismiss the Eighth Claim and grants Plaintiff 30

3   days leave to amend to assert a FTCA claim.  Plaintiff is advised that the failure to state

4   a claim in an amended complaint may result in the dismissal of this claim with

5   prejudice.

6   **The ABA's Motion to Dismiss**

7       Plaintiff asserts a single cause of action against the ABA.[13]  The Ninth Claim

8   alleges a violation of the Sherman Act, 15 U.S.C. §2, based upon allegations that the

9   ABA limits "the number of ABA-accredited law schools issuing degrees," lobbies for

10  "Restrictive Local Rules," and "has monopoly power in the submarket for individuals

11  capable of representing corporations before the federal courts, as well as in the market

12  for legal professionals."  (FAC ¶166).  As a consequence of the alleged "monopoly

13  power," an otherwise qualified prospective legal professional allegedly cannot obtain

14  a license to practice law without attending "a small number of extraordinarily

15  expensive ABA-certified law schools."  (FAC ¶168).  The ABA also bills at hourly

16  rates ranging from $250 to $1,000 per hour, participated in schemes designed to

17  exclude non-attorneys from having access to justice, and limited the legal profession

18  such that the majority of Americans do not have access to affordable and necessary

19  legal assistance.  (FAC ¶168).

20      The ABA argues that Greenspan lacks anti-trust standing.  Section 2 of the

21  Sherman Act provides: "Every person who shall monopolize, or attempt to monopolize,

22  or combine or conspire with any other persons, to monopolize any part of the trade or

23  commerce ... shall be deemed guilty of a felony." 15 U.S.C. § 2.  "To state a plausible

24  monopolization claim under this provision requires plaintiff to show: (a) the possession

25  of monopoly power in the relevant market; (b) the willful acquisition or maintenance

26  of that power; and (c) causal antitrust injury." Somers v. Apple, Inc., 729 F.3d 953, 963

27

28      [13] As with the other motions to dismiss, arguments raised by Corporate Plaintiffs
        have not been considered since they are no longer parties to this action.

1   (9th Cir. 2013) (citations and quotations omitted).

2       The critical issue raised by the ABA is whether Plaintiff adequately pleads a
3   plausible antitrust injury.  "Antitrust injury" means "injury of the type the antitrust
4   laws were intended to prevent and that flows from that which makes defendants' acts
5   unlawful." Id. (quoting Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc., 429 U.S. 477,
6   489 (1977)).   The Ninth Circuit identifies five elements of an antitrust injury: "1)
7   unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which
8   makes the conduct unlawful, [] (4) that is of the type the antitrust laws were intended
9   to prevent," and (5) that "the injured party be a participant in the same market as the
10  alleged malefactors, meaning the party alleging the injury must be either a consumer
11  of the alleged violator's goods or services or a competitor of the alleged violator in the
12  restrained market." Id.; Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone,
13  Inc., 140 F.3d 1228, 1232 (9th Cir. 1998).

14      Here, Plaintiff fails to plead that he suffered any antitrust injury.  The FAC fails
15  to articulate any unlawful conduct; any harm to Plaintiff arising from the unidentified
16  unlawful conduct; that the antitrust laws were intended to restrict associations, like the
17  ABA, to comment upon and promote procedural or substantive rules, statutes, or
18  regulations; or that he is a consumer of ABA's services.  Further, certain allegations
19  in the FAC are misinformed.  For example, the FAC alleges that the ABA "restrict[s]
20  the number of ABA-accredited law schools issuing degrees, which are necessary as a
21  prerequisite for Bar membership in almost every state in the United States, . . ."  The
22  court notes that there are about 23 unaccredited law schools in California whose
23  graduates may sit for the bar and obtain bar membership.  See http://admissions.calbar.
24  ca.gov/Education/LegalEducation/LawSchools.aspx.   With respect to any alleged
25  injury, Plaintiff alleges that the Corporate Plaintiffs spent money on "unnecessary"
26  attorneys' fees.  (FAC ¶¶181, 192).

27      Plaintiff also alleges that for small businesses the price of legal services is
28  prohibitive and "that ultimately the most sensible alternative is to abandon valid legal

claims." (FAC ¶171). This allegation and many others set forth in the Ninth Claim are superfluous and do not address, as currently pled, the elements required to state a 15 U.S.C. §2 claim. Plaintiff further alleges that the ABA lobbies for restrictive local rules (like L.R. 3-9(b)) and "promotes the economic interests of lawyers at the expense of all others." (FAC ¶176). The thrust of this and similar allegations is that "the ABA has undertaken a deliberate campaign designed to strip ordinary Americans - individuals and corporations alike - of their constitutional First Amendment rights to free speech and their right to self-representation pursuant to 28 U.S.C. §1654." (Ct. Dkt. at p.21:6-9). This conduct has allegedly resulted in Plaintiff's loss of personal income because Corporate Plaintiffs spent their revenues on attorneys' fees which would otherwise have passed through to Plaintiff. (FAC ¶64). To the extent that Plaintiff seeks to assert a claim based upon the alleged harm to Corporate Plaintiffs, such allegations of indirect harm fail to state a claim. See Ass'n of Wash. Pub. Hospt. Dists. v. Phillip Morris, Inc., 241 F.3d 696, 701-04 (9th Cir. 2001).

Accordingly, the court grants the ABA's motion to dismiss without leave to amend and with prejudice as there does not appear to be any circumstances under which Plaintiff will be able to assert a Sherman Act claim.

**Plaintiff's Request for Judicial Notice**

Pursuant to Federal Rule of Evidence 201, Plaintiff seeks to have the court take judicial notice of several documents. (Ct. Dkts. 49, 51). While the documents are generally of the type subject to judicial notice, the court denies the request for two reasons. First, evidentiary submissions are generally not required to resolve issues raised under Fed.R.Civ.P. 12(b) and they have not been considered by the court in relation to the pending motions. Second, many of the documents relate to Corporate Plaintiffs. As the Corporate Plaintiffs are no longer parties to this action, the documents have no relevancy to any issue at bar.

**Plaintiff's Motion to Amend**

Plaintiff moves for leave to file the SAC, primarily for the purpose of identifying

the correct Constitutional Amendment allegedly giving rise to his claims.  (Ct. Dkt. 34).  Defendants have not opposed the motion.  While leave to amend is to be freely given under Fed.R.Civ.P. 15(a), the court denies the motion because, for the above stated reasons, the amendment is futile under the legal theories asserted in the proposed SAC.  See Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991).  The motion to amend is denied as the proposed SAC fails to state a claim for relief.

### CONCLUSION

In sum, the court dismisses the Corporate Plaintiffs without prejudice for failure to obtain legal representation.  Corporate Plaintiffs will be dismissed from this action with prejudice unless, within 60 days of entry of this order, (1) Corporate Plaintiffs retain legal representation and (2) retained counsel files a Notice of Appearance.  The court also grants the CAND Defendants' motion to dismiss the First through Third Claims without leave to amend and with prejudice; grants the AO Defendants' motion to dismiss the Fourth through Seventh Claims without leave to amend and with prejudice and dismisses the Eighth Claim with leave to amend; and grants ABA's motion to dismiss the Ninth Claim without leave to amend and with prejudice.  The court also grants Plaintiff 30 days leave to amend (from the date of entry of this order) to file the amended FTCA cause of action (the Eighth Claim).

**IT IS SO ORDERED.**

DATED:  December 1, 2014

Hon. Jeffrey T. Miller
United States District Judge

cc:        All parties