1
2
3
4
5
6
7

8               **UNITED STATES DISTRICT COURT**

9               **NORTHERN DISTRICT OF CALIFORNIA**

10  AARON GREENSPAN; THINK          CASE No. 14cv2396 JTM
    COMPUTER FOUNDATION;
11  THINK COMPUTER                   **AMENDED** ORDER DISMISSING
    CORPORATION,                    CORPORATE PLAINTIFFS FOR
12                                  FAILURE TO OBTAIN LEGAL
                          Plaintiffs,   REPRESENTATION; GRANTING
13                                  ALL MOTIONS TO DISMISS;
         vs.                        DENYING MOTION FOR LEAVE TO
14                                  FILE SECOND AMENDED
                                    COMPLAINT; GRANTING LEAVE
15  ADMINISTRATIVE OFFICE OF        TO AMEND
    THE UNITED STATES COURTS;
16  MICHEL ISHAKIAN, in her official
    capacity on behalf of the
17  Administrative Office of the United
    States Courts; WENDELL SKIDGEL,
18  in his official capacity on behalf of the
    Administrative Office of the United
19  States; UNITED STATES DISTRICT
    COURT FOR THE NORTHERN
20  DISTRICT OF CALIFORNIA;
    RICHARD WIEKING, in his official
21  capacity on behalf of the United States
    District Court for the Northern District
22  of California; CLAUDIA WILKEN, in
    her official capacity on behalf of the
23  Untied States District Court for the
    Northern District of California; and
24  AMERICAN BAR ASSOCIATION,

25                          Defendants.

26

27          On December 1, 2014, the court entered an Order Dismissing Corporate

28  Plaintiffs for Failure to Obtain Legal Representation; Granting all Motions to Dismiss;

Denying Motion for Leave to File Second Amended Complaint and Granting Leave to Amend ("Order"). Through inadvertence, the court failed to address the American Bar Association's motion to dismiss the Tenth Claim for Violation of the Cartwright Act. This Amended Order addresses and dismisses the Tenth Claim with prejudice and without leave to amend.[1]

## INTRODUCTION

On August 21, 2014, the court issued an Order to Show Cause ("OSC) to Plaintiffs Think Computer Foundation ("Foundation") and Think Computer Corporation (collectively "Corporate Plaintiffs") to show cause why they should not be dismissed as parties for failure to obtain counsel. (Ct. Dkt. 44). Having carefully considered Plaintiffs' response to the OSC, (Ct. Dkt. 48), Plaintiffs' response to an earlier OSC issued by the Honorable Judge Beth Labson Freeman, (Ct. Dkt. 24), the response to the OSC filed by defendant American Bar Association ("ABA"), (Ct. Dkt. 50), the court record and pertinent legal authorities, the court dismisses Corporate Plaintiffs from this action without prejudice for failure to obtain legal representation. Corporate Plaintiffs will be dismissed from this action with prejudice unless, within 60 days of entry of this order, (1) Corporate Plaintiffs retain legal representation and (2) retained counsel files a Notice of Appearance.

This order also addresses the motions to dismiss filed by Defendants Administrative Office of the United States Courts ("AO"); Michel Ishakian, in her Official Capacity on behalf of the AO; Wendell Skidgel, in his official capacity on behalf of the AO; United States District Court for the Northern District of California ("CAND"); Richard Wieking, in his official capacity on behalf of the CAND; Claudia Wilken,[2] in her official capacity on behalf of the CAND; and the American Bar Association ("ABA"). Plaintiffs oppose all motions. For the reasons set forth below,

---

[1] The only changes made in this Amended Order relate to the Tenth cause of action and the addition of footnote 15.

[2] Although not named in the First Amended Complaint, Chief Judge Wilken is named in the Second Amended Complaint.

14cv2396

1   the court grants all motions to dismiss, dismisses the First through Seventh, the Ninth,

2   and Tenth causes of action with prejudice, dismisses the Eighth cause of action without

3   prejudice, and grants Plaintiff 30 days leave to amend from the date of entry of this

4   order to file an amended Eighth cause of action in a Third Amended Complaint.  The

5   court also denies Plaintiffs' motion for leave to file the proposed Second Amended

6   Complaint.

7                                       **BACKGROUND**

8   The Plaintiffs

9           On May 23, 2014, Corporate Plaintiffs commenced this action seeking injunctive

10  and declaratory relief.[3]  Among other things, the operative First Amended Complaint

11  ("FAC"), filed on June 16, 2014, added Aaron Greenspan as a party plaintiff. (Ct. Dkt.

12  23).[4]  Greenspan "is the founder, President, CEO, Chairman of the Board of Directors,

13  and 100% owner of Think Computer Corporation, as well as the founder, President,

14  and Chairman of the Board of Directors of Think Computer Foundation." (FAC ¶17).

15  Think Foundation is an Ohio non-profit corporation recognized by the Internal

16  Revenue Service as a tax-exempt organization under §501(c)(3) of the Internal

17  Revenue Code." (FAC ¶18).  Think Foundation operates a website (PlainSite.org)

18  "that compiles government information, including information from the Courts via

19  PACER, in order to make such information more accessible to the general public." Id.

20  Think Corporation is incorporated in Delaware with its principal place of business in

21  Mountain View, California.  Think Corporation developed the software used by

22  Foundation in operating PlainSite.org and it "plays an active role in its management."

23  (FAC ¶19).

24

25  ────────────────

26  [3] The court highlights that the term "Corporate Plaintiffs" refers to Think
    Computer Foundation and Think Computer Corporation, "Greenspan" or "Plaintiff"
27  refers to plaintiff Aaron Greenspan, and "Plaintiffs" to all three plaintiffs.

28  [4] The court notes that the Second Amended Complaint, addressed herein, is
    virtually identical to the FAC (except as to certain legal theories).  The differences
    between the complaints are not otherwise relevant to the present order.

The Defendants

Defendant AO is a federal governmental entity that "overseas PACER in all respects." (FAC ¶20).[5] The central PACER website is one of many individual PACER websites "that the various district, bankruptcy, and appellate courts each maintain with some degree of autonomy." (FAC ¶5). Defendant Michel Ishakian, sued in his official capacity, is an alleged federal employee of the AO, tasked with managing PACER, who personally communicated with Greenspan concerning PACER's fee structure. (FAC ¶21). Defendant Wendell Skidgel, sued in his official capacity, is an alleged Senior Attorney Advisor for the AO and personally communicated with Greenspan concerning PACER and its fee structure. Defendant CAND "is a federal district court in the Ninth Circuit with control over its own Local Rules." (FAC ¶23). Defendant Richard Wieking, sued in his official capacity, is the Clerk of Court of the CAND. The Honorable Judge Claudia Wilken, sued in her official capacity, is the Chief Judge of the CAND. She is allegedly responsible for "maintaining and setting the direction of the District Court's Local Rules." (FAC ¶25). Defendant ABA is the alleged "sole entity responsible for the accreditation of law schools within the United States" and "has participated jointly and severally with various state bar associations and courts to promulgate, validate, and enforce its anti-competitive policies." (FAC ¶26).

The Claims

The First Claim, asserted against Chief Judge Wilken, Clerk of Court Wieking, and the CAND (collectively the "CAND Defendants"), is for the alleged violation of 42 U.S.C. ¶1983 based upon the adoption of L.R. 3-9(b), which requires corporations to obtain legal representation, and L.R. 5-1(b), which requires pro se litigants to seek and obtain permission from the judge assigned to their case in order to become an ECF user. Such conduct allegedly violates the equal protection clause of the Fifth

---

[5] Electronic access to public court filings in federal district and appellate courts is provided by a system known as PACER or Public Access to Court Electronic Records.

Amendment.[6]   (Ct. Dkt. 34 ¶2).   The Second Claim, asserted against the CAND Defendants, is based upon the same conduct described in the First Claim but allegedly arises under the Due Process clause of the Fifth Amendment.   Id.   The Third Claim, asserted against the CAND Defendants, is for the alleged violation of 42 U.S.C. §1983 based upon the adoption of L.R. 3-9(b).   Such conduct allegedly violates the First Amendment under the theory that the Corporate Plaintiffs may represent themselves in court proceedings pro se as "a form of political expression and association." (FAC ¶123).

The Fourth Claim, asserted against Defendants Ishakian, Skidgel, and the AO (collectively the "AO Defendants"), is for the alleged violation of 42 U.S.C. §1983 based upon L.R. 5-1(b) and the fee structure imposed by the AO for obtaining copies of the court docket, charging $0.10 per page.   Such conduct allegedly violates the "Equal Protection Clause of the Fifth Amendment."[7] The Fifth Claim, asserted against the AO Defendants, is based upon the same conduct described in claim four but allegedly arises under the Due Process Clause of the Fifth Amendment.   The Sixth Claim, asserted against the AO Defendants, alleges that they violated his First Amendment rights by "interfer[ring] with Plaintiff's ability to write and speak about government activities by imposing an unlawful cost structure for PACER data." (FAC ¶148).   The Seventh Claim, asserted against the AO Defendants, alleges that the copying fee of $0.10 per page violates the "E-Government Act of 2002, which Congress intended to promote access to public domain information, by being unreasonable and far in excess of the extent necessary to operate and improve PACER." (FAC ¶155).   The Eighth Claim, asserted against the AO Defendants, alleges a Federal Tort Claims Act ("FTCA") claim, 28 U.S.C. §1346, and seeks the return of

---

[6] The proposed SAC identifies the Fifth Amendment as the constitutional amendment allegedly violated by Defendants, and not the Fourteenth Amendment as alleged in the FAC. (Ct. Dkt. 34).

[7] The reference to the "Equal Protection Clause of the Fifth Amendment" is Plaintiffs' characterization of the nature of this claim. (SAC at p.28:19-21; 33:15-16). For consistency, the court repeats this phrase throughout this order.

1   the copying costs ($1,077.56) of PACER documents.

2       The Ninth Claim, asserted against the ABA, alleges a violation of the Sherman

3   Act, 15 U.S.C. §2, based upon allegations that the ABA limits "the number of ABA-

4   accredited law schools issuing degrees," lobbies for "Restrictive Local Rules," and

5   "has monopoly power in the submarket for individuals capable of representing

6   corporations before the federal courts, as well as in the market for legal professionals."

7   (FAC ¶166).  As a consequence of the alleged "monopoly power," otherwise qualified

8   prospective legal professionals allegedly cannot obtain a license to practice law without

9   attending "a small number of extraordinarily expensive ABA-certified law schools."

10  (FAC ¶168).  The ABA also bills at hourly rates ranging from $250 to $1,000 per hour,

11  participated in schemes designed to exclude non-attorneys from having access to

12  justice, and limited the legal profession such that the majority of Americans do not

13  have access to affordable and necessary legal assistance.  (FAC ¶168).  The Tenth

14  Claim, asserted against the ABA, alleges a violation of the Cartwright Act, Cal. Bus.

15  and Prof. Code § 16700 et seq., based upon allegations that the "ABA limits the

16  quantity of ABA-accredited law schools," "imposes and/or recommends policies

17  intended to artificially increase the market price of legal services," "encouraged

18  Restrictive Local Rules and policies that amount to refusals to deal with non-

19  attorneys."  (FAC ¶¶187, 188, 191).  "Corporate Plaintiffs have been damaged in the

20  amount spent on unnecessary attorney's fees as a result of Defendant ABA's unlawful

21  activity, or at least $50,000."   (FAC ¶192)

22      Plaintiffs allege that they have spent in excess of $1,000 in expenses related to

23  PACER.  In broad brush, Plaintiff argues that the PACER fees

24      are being collected in violation of the E-Government Act of 2002, [and
25      that] PACER is a colossal mess from a technological perspective that
        routinely overcharges users for errors, failed search results, and
        documents that the system has recorded as already having been purchased.
26      Just as importantly, CM/ECF, the e-filing component of PACER, offers
        parties to a case one free copy of each document in that case - except
27      when the party does not have access, which is often.

28  (Ct. Dkt. 41, Oppo. at p.2:12-17).  The AO charges users $0.10 per page for PACER

data and $2.40 per audio file.  (FAC ¶27).  The FAC alleges that the PACER fee schedule states that "No fee is charged for access to judicial opinions."  This is allegedly false because "PACER very often charged $0.10 per page for access to judicial opinions."  (FAC ¶30).

The FAC generally alleges two broad categories of wrongs, one arising from the PACER system and the other from the requirement that corporate entities must be represented by an attorney as required by federal law and Civil Local Rule 3-9(b). The FAC alleges that the fees collected through PACER violate the E-Government Act of 2002. The controlling statute provides "[t]he fees and costs to be charged and collected in each court of appeals shall be prescribed from time to time by the Judicial Conference of the United States. Such fees and costs shall be reasonable and uniform in all the circuits." 28 U.S.C. §1913.  The FAC alleges that the fees charged are excessive and cites a Princeton University Center report which identifies that, in 2010, PACER's expenses were about $25 million and its revenues of $90 million thus resulting in a profit of $65 million.  (FAC ¶¶34 - 35).  The FAC alleges that the practice of overcharging for PACER continues to the present date.  Greenspan's request for a refund of PACER fees has been denied by the AO.  (FAC ¶54).

The other central claim is that corporate entities should be able to represent themselves in federal court.  The FAC broadly alleges a First Amendment right to self-representation by fictitious entities.  In addition, the requirement for legal representation is financially burdensome to corporations, particularly those classified as "small business."  (FAC ¶¶60 - 66).

The essence of the claim against the ABA is that the ABA participates in proposed changes to the Federal Rules of Civil Procedure and Local Rules for "the true purposes . . . to attempt to increase demand for and exclude competition with attorneys, whose private interests are collectively represented by Defendant ABA."  (FAC ¶96). Through these actions, the ABA allegedly conspires with its members "to impose restrictive Local Rules."  (FAC ¶97).

1   Procedural History

2        On June 11, 2014, Judge Freeman issued an Order to Show Cause why the

3   original complaint, filed by the Corporate Plaintiffs only, should not be dismissed

4   because the Corporate Plaintiffs were not represented by counsel.  On June 16, 2014

5   the FAC was filed, adding Greenspan as a plaintiff.  On July 17, 2014, Judge Freeman

6   issued an order, noting that Corporate Plaintiffs could appear only through licensed

7   counsel.  However, as Greenspan was now a party to the action, the court left "for

8   another day the determination as to whether the Corporate Plaintiffs may appear

9   without counsel properly licensed to practice law before this Court."  (Ct. Dkt. 33).

10       On July 23, 2014, Plaintiffs filed a proposed Second Amended Complaint

11  ("SAC") adding Chief Judge Wilken as a party defendant.  Shortly thereafter, Judge

12  Freeman recused herself from the case and, on August 5, 2014, the Executive

13  Committee for the Northern District of California ordered that this case be reassigned

14  to an out-of-district judge. (Ct. Dkt. 39).  On August 8, 2014, the case was reassigned

15  by the Executive Committee to the undersigned.  (Ct. Dkt. 40).

16       On August 21, 2014, the undersigned granted Greenspan's request for

17  Permission for Electronic Case Filing pursuant to Northern District Civil L.R. 5.1.  The

18  court denied the motion with respect to the Corporate Plaintiffs because they had not

19  retained legal representation.  On the same date, the court also issued an OSC to the

20  Corporate Plaintiffs to show cause why they should not be dismissed without prejudice

21  for failure to retain legal representation.  The court also set a briefing schedule on

22  Plaintiffs' Motion for Leave to file the SAC and the various motions to dismiss.  The

23  present order addresses the OSC and all pending motions.

24                              **DISCUSSION**

25  **Legal Standards**

26       Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in

27  "extraordinary" cases.  United States v. Redwood City, 640 F.2d 963, 966 (9th Cir.

28  1981).  Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a

"cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief); Ashcroft v. Iqbal, 556 U.S. 662 (2009) (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991). The courts may, however, consider material properly submitted as part of the complaint. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

**The Order to Show Cause**

In response to the OSC, Greenspan contends that legal representation for the Corporate Plaintiffs is too expensive, burdensome, and not necessary in today's legal environment. Further, Greenspan argues that Corporate Plaintiffs, after Citizens United v. Federal Election Com'n, 588 U.S. 310 (2010), have the First Amendment right to

1    self-representation.[8]   These arguments are not persuasive and run counter to well-
2    established and precedential authorities.

3         As noted by the Supreme Court, "[i]t has been the law for the better part of two
4    centuries, for example, that a corporation may appear in the federal courts only through
5    licensed counsel."   Rowland v. California Men's Colony, Unit II Men's Advisory
6    Council, 506 U.S. 194, 201-02 (1993) (quoting Osborn v. President of Bank of United
7    States, 9 Wheat. 738, 829, 6 L.Ed. 204 (1824)).   This well-established rule applies
8    equally to corporations or to associations.   See In re Highley, 459 F.2d 554, 555 (9th
9    Cir. 1972) (corporations); McShane v. United States, 366 F.2d 286, 288 (9th Cir. 1996)
10   (a non-attorney pro se plaintiff may not represent any other party); United States v.
11   High Country Broad Co., Inc., 3 F.3d 1244, 1245 (9th Cir. 1993) ("A corporation may
12   appear in federal court only through licensed counsel.").   This same venerable common
13   law rule exists in the State of California.   "[A] corporation, unlike a natural person,
14   cannot represent itself before courts of record in propria persona, nor can it represent
15   itself through a corporate officer, director or other employee who is not an attorney. It
16   must be represented by licensed counsel in proceedings before courts of record." CLD
17   Const. Inc. v. City of San Ramon, 120 Cal.App.4th 1141, 1145 (2004).

18        Absent contrary legal authority, this court is not free to disregard established
19   precedent.[9]   While Greenspan cites several lower court authorities which have
20   permitted certain individuals to make limited appearances on a fictitious entity's behalf,
21   those authorities have no precedential value and represent aberrant cases. The Supreme

22
23
24   ───────────────────

25        [8] Plaintiff specifically challenges the constitutionality of L.R. 3-9(b) ("A
     corporation, unincorporated association, partnership or other such entity may appear
26   only through a member of the bar of this Court.") which requires corporate entities to
     be represented by legal counsel.

27        [9] The court notes that Greenspan dedicates a substantial portion of his response
     to the OSC to a critique of the legal profession.  (Ct. Dkt. 124 at pp. 9:3 - 16:11, Exh.
28   A).  This argument has no bearing on whether a fictitious business entity may appear
     in a legal proceeding without legal representation.

14cv2396

Court referred to one of the authorities cited in the FAC,[10] In Re Holliday's Tax Serv., Inc., 417 F.Supp. 182 (E.D.N.Y. 1976), as one of those "aberrant cases" that does not uniformly hold that "corporations, partnerships, or associations" may "appear in federal court" only through a licensed attorney. Rowland, 506 U.S. at 202, n.5.

The court also rejects Greenspan's argument that Citizen's United created a First Amendment free speech right for corporations or associations to appear in federal court without legal representation. Greenspan argues that Corporate Plaintiffs may advocate for a change in the law with respect to legal representation and that such corporate political speech "involves issues of federal policy and its impact on businesses and non-profit organizations." (Ct. Dkt. 48 at ¶9). There is no doubt that the Corporate Plaintiffs or Greenspan may advocate issues of federal policy and its impact on businesses and non-profit organizations. Plaintiffs may, among many other things, lobby for changes in the law, write editorials, and organize protests against the law, all on behalf of the Corporate Plaintiffs. However, the issue before the court is a narrower one: Whether a non-lawyer individual appearing pro se in this action may provide legal representation to the Corporate Plaintiffs. The answer to this issue is a resounding no. Citizens United does not undermine this court's determinations.

In Citizens United, the Supreme Court held that the First Amendment prohibited the government from restricting independent political expenditures by a nonprofit corporation. Applying this principle to the Corporate Plaintiffs, they are free to spend any amount of money they desire in support of political causes or candidates (although they are limited in the amount of money given directly to candidates). The only legal authority located by the parties or this court which addressed the impact of Citizens United on a pro se's ability to represent corporate entities rejected such a notion. Timberline Builders, Inc. v. Donald D. Jayne Trust, 786 N.W.2d 873 at *3 (Iowa 2010).

---

[10] The court notes that the FAC does not comply with Fed.R.Civ.P. 8(a). Rule 8(a) requires a complaint to set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Legal argument in a complaint is not appropriate under federal pleading rules.

1   The Iowa Court of Appeals aptly noted "[w]hen a business accepts the advantages of

2   incorporation, it must also bear the burdens, including the need to hire counsel to sue

3   or defend in court." Id. (quoting Woodford Mfg. Co. v. A.O.Q., Inc. 772 P.2 652, 654

4   (Colo. App. 1988), cert. denied, 797 P.2 748 (Colo. 1990)). Citizens United is simply

5   not helpful to Corporate Plaintiffs.[11]

6       In sum, the court dismisses the Corporate Plaintiffs from this action without

7   prejudice. Corporate Plaintiffs will be dismissed from this action with prejudice

8   unless, within 60 days of entry of this order, (1) Corporate Plaintiffs retain legal

9   representation and (2) retained counsel files a Notice of Appearance.

10  **The CAND Defendants**

11      Plaintiff alleges three claims against the CAND Defendants based upon the

12  alleged adoption of L.R. 3-9(b), which requires corporations to obtain legal

13  representation, and L.R. 5-1(b), which requires pro se litigants to seek and obtain

14  permission from the judge assigned to their case in order to become an ECF user. The

15  First Claim arises from the enactment of these Local Rules and allegedly violates the

16  "Equal Protection Clause of the Fifth Amendment." The Second Claim is based upon

17  the same conduct described in the First Claim but allegedly arises under the Due

18  Process Clause of the Fifth Amendment. The Third Claim is based upon the adoption

19  of L.R. 3-9(b). These claims fail on many different levels.[12] Each claim challenges the

20  constitutionality of L.R. 5-1(b).

21

22      [11] The court notes that Plaintiff appears to be under a misconception concerning

23  the role of the First Amendment in federal court. Federal courts are not public forums. The Federal Rules of Evidence severely limit speech to "relevant" evidence. Further,

24  legal issues, with certain limited exceptions not applicable in the present case, are constrained by legal precedent, whether arising under constitutional, statutory, or

25  common law.

26      [12] At the outset, the court dismisses those portions of the First through Third causes of action challenging the constitutionality of L.R. 3-9(b), because (1) as set forth

27  above, the requirement that fictitious entities may appear in legal proceedings only through legal representation is constitutional and (2) Plaintiff lacks standing to bring

28  a challenge to L.R. 3-9(b) because he is an individual appearing pro se on his own behalf and not the Corporate Plaintiffs' legal counsel. L.R. 3-9(b) simply does not apply to Greenspan.

1    The court dismisses all three causes of action for several reasons.  First, Plaintiff

2    does not identify the legal basis for his claims.  Plaintiff brings these claims pursuant

3    to 42 U.S.C. §1983.  However, as acknowledged by Plaintiff, this section only applies

4    to state actors and the CAND Defendants are federal actors.  <u>Id.</u>  The claims also do not

5    arise under <u>Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics</u>, 403

6    U.S. 388 (1971) because the CAND Defendants are sued in their official, and not

7    individual, capacities.  <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994) (no <u>Bivens</u>

8    claims against federal agencies); <u>Consejo de Desarrollo Economico de Mexicali v.</u>

9    <u>United States</u>, 482 F.3d 1157, 1173 (9th Cir. 2007) (no <u>Bivens</u> claims against agents

10   in their official capacity).  The failure to identify the legal basis for the claims alleged

11   in the complaint warrants dismissal of these claims.

12       Second, the CAND Defendants are entitled to legislative immunity in

13   promulgating local rules.  The promulgation of local court rules is a legislative

14   function.  In <u>Supreme Court of Virginia v. Consumers Union of U.S., Inc.</u>, 446 U.S.

15   719 (1980), the Supreme Court held that the Virginia Supreme Court, and its chief

16   justice, sued in his official capacity, were immune from suit in adopting local bar rules.

17   <u>Id.</u> at 734.  While immunity is appropriate where judges act in an authorized legislative

18   capacity, immunity does not extend to "insulate judges from declaratory or injunctive

19   relief with respect to their judicial acts."  <u>Id.</u> 735.  Here, there are no allegations that

20   the CAND Defendants have acted in an adjudicative capacity.  Accordingly, as

21   currently pleaded, CAND Defendants are entitled to immunity for these causes of

22   action.

23       Finally, Plaintiff would not prevail on the merits.  L.R. 5-1(b) provides:

24   A case that involves a pro se party is subject to electronic filing, unless it
     is a sealed case. However, the pro se party may not file electronically
25   unless the pro se party moves for and is granted permission by the
     assigned judge to become an ECF user in that case. Parties represented by
26   counsel in a case involving a pro se party must file documents
     electronically and serve them manually on the pro se party unless the pro
27   se party has been granted permission to become an ECF user.

28   Under either equal protection or due process principles, the rule passes constitutional

14cv2396

1   muster.

2          "The Equal Protection Clause does not forbid classifications.  It simply keeps

3   governmental decisionmakers from treating differently persons who are in all relevant

4   respects alike. Evidence of different treatment of unlike groups does not support an

5   equal protection claim." Wright v. Incline Village General Improvement Dist., 665

6   F.3d 1128, 1140 (9th Cir. 2011) (citations omitted).  Where the local rule does not

7   violate constitutionally protected fundamental rights and does not operate to the

8   "detriment of a suspect class, the only requirement of equal protection is that [the local

9   rule] be rationally related to a legitimate governmental interest." Harris v. McRae, 448

10  U.S. 297, 326 (1980).

11         Here, the CAND, like other judicial districts, could have rationally concluded

12  that a case-by-case review was a reasonable and rational means to account for the

13  diverse backgrounds, technical abilities, and economic realities of pro se litigants.

14  While virtually every attorney has access to computer technology (pursuant to L.R. 5-1

15  all attorneys must file electronically), a number of pro se litigants lack access to a

16  computer (i.e. individuals who may be incarcerated, economically distressed, or

17  intellectually challenged) or the skills needed to maneuver through the electronic case

18  filing system.  Seen in this light, there is a reasonable and rational basis to require pro

19  se litigants who desire to file electronically to make a simple application to the court

20  for leave to file electronically.  The court concludes that there is no fundamental right

21  to file documents electronically or identifiable suspect class.  Accordingly, L.R. 5-1(b)

22  is rationally related to legitimate judicial interests.

23         Whether Plaintiff asserts a substantive or procedural due process claim (the

24  complaint is unclear on this point), the claims do not survive scrutiny.  Because

25  Plaintiff cannot identify a fundamental right or suspect classification, he must

26  demonstrate that there is no rational basis for L.R. 5-1(b). See Gallo v. U.S. Dist. Court

27  for Dist. Of Arizona, 349 F.3d 1169, 1181 (9th Cir. 2003) (local rule restricting

28  appearances to members of the forum state's bar, thus excluding out-of-state attorneys

1  from practicing law in Arizona, does not violate substantive due process); <u>United</u>

2  <u>States v. Alexander</u>, 48 F.3d 1477, 1491 (9th Cir. 2011).

3      In sum, as there are no circumstances under which Plaintiff can state a claim

4  against the CAND Defendants based upon the adoption of L.R. 5-1(b), the court

5  dismisses Claims One, Two, and Three with prejudice and without leave to amend.

6  **The AO Defendants**

7      <u>The Fourth, Fifth and Sixth Claims</u>

8      The Fourth, Fifth, and Sixth Claims, brought pursuant to 42 U.S.C. §1983,

9  broadly allege that the PACER fee schedule discriminates against the indigent, there

10  is no appeal process to seek a refund for PACER fees paid in violation of due process,

11  and the charging of PACER fees violates Plaintiff's First Amendment rights. These

12  claims fail for multiple reasons.

13      First, Plaintiff's legal theory, brought pursuant to 42 U.S.C. §1983 (or even if

14  Plaintiff alleged a <u>Bivens</u> violation) affords no relief against the AO or officials in their

15  official capacities.  <u>See</u> <u>Meyer</u>, 510 U.S. at 486 (no <u>Bivens</u> claims against federal

16  agencies); <u>Consejo de Desarrollo Economico</u>, 482 F.3d at 1173 (no <u>Bivens</u> claims

17  against agents in their official capacity).  Second, the AO Defendants also assert that

18  Plaintiff is not alleged to be an indigent individual and, therefore, he lacks standing to

19  argue that the PACER fee schedule discriminates against the indigent.  <u>See</u> <u>Lujan v.</u>

20  <u>Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992).  Plaintiff does not dispute this

21  argument.  Rather,  he contends that one of the Corporate Plaintiffs demonstrated a net

22  loss.  This argument is insufficient to demonstrate an actual injury because the

23  Corporate Plaintiffs are no longer parties to this action.  Third, with respect to the Fifth

24  Claim for a refund, the complaint fails to allege that Plaintiff personally, and not the

25  Corporate Plaintiffs, paid for copying costs.  Fourth, Plaintiff fails to cite any authority

26  that due process requires an agency to provide an appeal process. <u>See</u> <u>In re Burley</u>, 738

27  F.2d 981, 987 (9th Cir. 1984) ("there is no constitutional right to an appeal").  Fifth,

28  Plaintiff's claim that the fee structure violates the First Amendment is baseless.

Plaintiff, like any other person, has free access to one copy of any document filed in the case and, with respect to any other case filed in the Northern District of California (or virtually any other judicial district in the country for that matter), Plaintiff can also access any filing, except those documents filed under seal, by accessing the public terminals in the Clerks' offices.[13]  There is little, if any, burden on Plaintiff's First Amendment rights when he has free access to court documents and upon payment of the copying fee he can obtain copies of documents in those cases where he is not a party.  See Bacon v, Reyes, 2013 SL 1405843 at *4 (D. Nev. April 4, 2013); Johnson v. Moore, 948 F.2d 517, 521 (9th Cir. 1991) ("A denial of free photocopying does not amount to a denial of access to the courts.").

In sum, the court grants the motion to dismiss the Fourth through Sixth claims with prejudice and without leave to amend.

The Seventh Claim

The Seventh Claim alleges that the PACER fee structure violates the E-Government Act 2002, 44 U.S.C. §3501 et seq..  (FAC ¶163).  This claim also fails for multiple reasons. First, the E-Government Act of 2002 does not provide a private right of action and Plaintiff fails to address this defect in his opposition.  In re French, 401 B.R. 295, 313 (E.D. Tenn. 2009) ("the E-Government Act of 2002 does not provide a private cause of action"); see Logan v. U.S. Bank Nat'l Ass'n, 722 F.3d 1163, 1169-73 (9th Cir. 2013) (dismissing claims where the statute at issue did not provide a private right of action).

Even if alleged, the court also notes that this claim is not reviewable under the Administrative Procedures Act ("APA") because the AO is not an agency for purposes of the APA.  Courts are authorized to review federal agency action. 5 U.S.C. §551(1). However, it defines the term "agency" to exclude the "courts of the United States."  5 U.S.C. §701(b)(1)(B).  Muirhead v. Mecham, 427 F.3d 14, 18 (1st Cir. 2005) ("The

---

[13] Pursuant to Federal Rule of Evidence 201 the court takes judicial notice that the Clerk's Office provides public access terminals which provide free access to PACER documents, although printing those documents cost $0.10 per page.

14cv2396

Administrative Office of the United States Courts is part of the judicial branch, so the Director's actions are not subject to judicial review under the terms of this waiver."); Tashima v. Administrative Office of the U.S. Courts, 719 F.Supp. 881, 886 (C.D. Cal. 1989) (the AO is not an "agency" within the meaning of the APA).

In sum, the court grants the motion to dismiss the Seventh Claim with prejudice and without leave to amend because there are no circumstances under which Plaintiff can state a claim for violation of the E-Government Act of 2002.

The Eighth Claim

The Eighth Claim alleges that the AO Defendants, by charging PACER fees, are liable for "conversion, theft of funds, wire fraud and/or bank fraud" under the FTCA. The FAC alleges that all Plaintiffs paid $1,077.56 in copying costs. As with the other claims alleged by Plaintiff, this claim fails on many levels. First, Plaintiff has failed to join the United States as a party. The United States is the only party liable under the FTCA. F.D.I.C. v. Craft, 157 F.3d 697, 706 (9th Cir. 1998). Second, the allegations of "conversion, theft of funds, wire fraud, and/or bank fraud" fail to state a claim. The allegations of overcharging for copying costs do not support a claim for conversion or civil theft. See Williamson v. Reinalt-Thomas Corp., 2012 WL 1438812 at *5 (N.D. Cal. April 25, 2012) (holding that overcharging does not constitute conversion). Third, with respect to "bank fraud" or "wire fraud," Plaintiff must comply with the particularity requirement of Fed.R.Civ.P. 9(b), something Plaintiff fails to do. Finally, claims for misrepresentation or fraud are barred by 28 U.S.C. §2680(h). Accordingly, this claim necessarily fails.

The court grants the motion to dismiss the Eighth Claim and grants Plaintiff 30 days leave to amend to assert a FTCA claim. Plaintiff is advised that the failure to state a claim in an amended complaint may result in the dismissal of this claim with prejudice.

14cv2396

1    **The ABA's Motion to Dismiss**[14]

2        <u>The Ninth Claim</u>

3        The Ninth Claim alleges a violation of the Sherman Act, 15 U.S.C. §2, based

4    upon allegations that the ABA limits "the number of ABA-accredited law schools

5    issuing degrees," lobbies for "Restrictive Local Rules," and "has monopoly power in

6    the submarket for individuals capable of representing corporations before the federal

7    courts, as well as in the market for legal professionals." (FAC ¶166). As a

8    consequence of the alleged "monopoly power," an otherwise qualified prospective

9    legal professional allegedly cannot obtain a license to practice law without attending

10   "a small number of extraordinarily expensive ABA-certified law schools." (FAC

11   ¶168). The ABA also bills at hourly rates ranging from $250 to $1,000 per hour,

12   participated in schemes designed to exclude non-attorneys from having access to

13   justice, and limited the legal profession such that the majority of Americans do not

14   have access to affordable and necessary legal assistance. (FAC ¶168).

15       The ABA argues that Greenspan lacks anti-trust standing. Section 2 of the

16   Sherman Act provides: "Every person who shall monopolize, or attempt to monopolize,

17   or combine or conspire with any other persons, to monopolize any part of the trade or

18   commerce ... shall be deemed guilty of a felony." 15 U.S.C. § 2. "To state a plausible

19   monopolization claim under this provision requires plaintiff to show: (a) the possession

20   of monopoly power in the relevant market; (b) the willful acquisition or maintenance

21   of that power; and (c) causal antitrust injury." <u>Somers v. Apple, Inc.</u>, 729 F.3d 953, 963

22   (9th Cir. 2013) (citations and quotations omitted).

23       The critical issue raised by the ABA is whether Plaintiff adequately pleads a

24   plausible antitrust injury. "Antitrust injury" means "injury of the type the antitrust

25   laws were intended to prevent and that flows from that which makes defendants' acts

26   unlawful." <u>Id.</u> (quoting <u>Brunswick Corp. v. Pueblo Bowl–O–Mat, Inc.</u>, 429 U.S. 477,

27

28       [14] As with the other motions to dismiss, arguments raised by Corporate Plaintiffs have not been considered since they are no longer parties to this action.

14cv2396

489 (1977)).    The Ninth Circuit identifies five elements of an antitrust injury: "1) unlawful conduct, (2) causing an injury to the plaintiff, (3) that flows from that which makes the conduct unlawful, [] (4) that is of the type the antitrust laws were intended to prevent," and (5) that "the injured party be a participant in the same market as the alleged malefactors, meaning the party alleging the injury must be either a consumer of the alleged violator's goods or services or a competitor of the alleged violator in the restrained market." Id.; Lucas Automotive Engineering, Inc. v. Bridgestone/Firestone, Inc., 140 F.3d 1228, 1232 (9th Cir. 1998).

Here, Plaintiff fails to plead that he suffered any antitrust injury.  The FAC fails to articulate any unlawful conduct; any harm to Plaintiff arising from the unidentified unlawful conduct; that the antitrust laws were intended to restrict associations, like the ABA, to comment upon and promote procedural or substantive rules, statutes, or regulations; or that he is a consumer of ABA's services.  Further, certain allegations in the FAC are misinformed.  For example, the FAC alleges that the ABA "restrict[s] the number of ABA-accredited law schools issuing degrees, which are necessary as a prerequisite for Bar membership in almost every state in the United States, . . ."  The court notes that there are about 23 unaccredited law schools in California whose graduates may sit for the bar and obtain bar membership.  See http://admissions.calbar. ca.gov/Education/LegalEducation/LawSchools.aspx.   With respect to any alleged injury, Plaintiff alleges that the Corporate Plaintiffs spent money on "unnecessary" attorneys' fees.  (FAC ¶¶181, 192).

Plaintiff also alleges that for small businesses the price of legal services is prohibitive and "that ultimately the most sensible alternative is to abandon valid legal claims."  (FAC ¶171).  This allegation and many others set forth in the Ninth Claim are superfluous and do not address, as currently pled, the elements required to state a 15 U.S.C. §2 claim.  Plaintiff further alleges that the ABA lobbies for restrictive local rules (like L.R. 3-9(b)) and "promotes the economic interests of lawyers at the expense of all others."  (FAC ¶176).  The thrust of this and similar allegations is that "the ABA

has undertaken a deliberate campaign designed to strip ordinary Americans - individuals and corporations alike - of their constitutional First Amendment rights to free speech and their right to self-representation pursuant to 28 U.S.C. §1654." (Ct. Dkt. at p.21:6-9).   This conduct has allegedly resulted in Plaintiff's loss of personal income because Corporate Plaintiffs spent their revenues on attorneys' fees which would otherwise have passed through to Plaintiff.   (FAC ¶64). To the extent that Plaintiff seeks to assert a claim based upon the alleged harm to Corporate Plaintiffs, such allegations of indirect harm fail to state a claim.  See Ass'n of Wash. Pub. Hosp. Dists. v. Phillip Morris, Inc., 241 F.3d 696, 701-04 (9th Cir. 2001).

In sum, the court grants the ABA's motion to dismiss the Ninth Claim without leave to amend and with prejudice as there does not appear to be any circumstances under which Plaintiff will be able to assert a Sherman Act claim.

The Tenth Claim

"In 1907, the California Legislature enacted the Cartwright Act which 'generally outlaws any combinations or agreements which restrain trade or competition or which fix or control prices.'" Ashai Kasei Pharma Corp. v. CoTherix, Inc., 204 Cal.App.4th 1, 7 (2012) (citations omitted).  Like the Sherman Act, the Cartwright Act, Cal. Bus. and Prof. Code §16700 et seq., generally "prohibits conspiracies that unreasonably restrain trade."  SC Manufactured Homes, Inc. v. Liebert, 162 Cal.App.4th 68, 84 (2008).   Any person injured in his or her business or property may,  "by reason of anything forbidden or declared unlawful by" the Cartwright Act bring a private action for treble damages or injunctive relief. Bus. and Prof. Code §16750. Section 16720(a) defines the prohibited kinds of "trusts" (combinations of capital, skill or acts by two or more persons) as including those created for or carrying out unreasonable restrictions in trade or commerce.

In order to prevail on Plaintiff's claim that the ABA "is an unlawful trust designed to restrict trade and market competition in the market for legal services," (FAC ¶186), he must establish "1) the formation and operation of the conspiracy; (2)

1    illegal acts done pursuant thereto; and (3) damage proximately caused by such acts."

2    Asahi, 204 Cal.App.4th at 8.  Here, the FAC not only fails to allege the operation of

3    the conspiracy but to identify any illegal activities taken by the ABA.  Finally, Plaintiff

4    cannot allege that he suffered any damages because the Corporate Plaintiffs, and not

5    Plaintiff, spent $50,000 "on unnecessary attorney's fees as a result of Defendant ABA's

6    unlawful activity."  (FAC ¶191).

7         In sum, the court grants the ABA's motion to dismiss the Tenth Claim without

8    leave to amend and with prejudice as there does not appear to be any circumstances

9    under which Plaintiff will be able to assert a Cartwright Act claim.

10   **Plaintiff's Request for Judicial Notice**

11        Pursuant to Federal Rule of Evidence 201, Plaintiff seeks to have the court take

12   judicial notice of several documents.  (Ct. Dkts. 49, 51).  While the documents are

13   generally of the type subject to judicial notice, the court denies the request for two

14   reasons.  First, evidentiary submissions are generally not required to resolve issues

15   raised under Fed.R.Civ.P. 12(b) and they have not been considered by the court in

16   relation to the pending motions.  Second, many of the documents relate to Corporate

17   Plaintiffs.   As the Corporate Plaintiffs are no longer parties to this action, the

18   documents have no relevancy to any issue at bar.

19   **Plaintiff's Motion to Amend**

20        Plaintiff moves for leave to file the SAC, primarily for the purpose of identifying

21   the correct Constitutional Amendment allegedly giving rise to his claims.  (Ct. Dkt.

22   34).  Defendants have not opposed the motion.  While leave to amend is to be freely

23   given under Fed.R.Civ.P. 15(a), the court denies the motion because, for the above

24   stated reasons, the amendment is futile under the legal theories asserted in the proposed

25   SAC.  See Saul v. United States, 928 F.2d 829, 843 (9th Cir. 1991).  The motion to

26   amend is denied as the proposed SAC fails to state a claim for relief.

27                                    **CONCLUSION**

28        In sum, the court dismisses the Corporate Plaintiffs without prejudice for failure

14cv2396

1  to obtain legal representation.  Corporate Plaintiffs will be dismissed from this action

2  with prejudice unless, within 60 days of entry of this order, (1) Corporate Plaintiffs

3  retain legal representation and (2) retained counsel files a Notice of Appearance.  The

4  court also grants the CAND Defendants' motion to dismiss the First through Third

5  Claims without leave to amend and with prejudice; grants the AO Defendants' motion

6  to dismiss the Fourth through Seventh Claims without leave to amend and with

7  prejudice and dismisses the Eighth Claim with leave to amend; and grants ABA's

8  motion to dismiss the Ninth and Tenth Claims without leave to amend and with

9  prejudice.  The court also grants Plaintiff 30 days leave to amend (from the date of

10  entry of this order) to file the amended FTCA cause of action (the Eighth Claim).[15]

11  **IT IS SO ORDERED.**

12  DATED:  December 4, 2014

13  _____

14  Hon. Jeffrey T. Miller
    United States District Judge

15  cc:        All parties

16

17

18

19

20

21

22

23

24

25

26

27  _____

28  [15] As Corporate Plaintiffs are no longer parties to this action, the rulings on the causes of action do not apply to them.  However, the analysis supporting the dismissal of certain claims with prejudice (Claims One through Seven) would appear to apply equally to Corporate Plaintiffs.